HEDGECOCK BUILDERS SUPPLY COMPANY OF GREENSBORO v. WILLIAM H. WHITE, JR., AND WIFE, JOANNE WHITE, MICHAEL G. ADAMS, AND WILLIAM H. WHITE, JR., D/B/A ADAMS-WHITE DEVELOPMENT COMPANY

No. 8818SC481

(Filed 17 January 1989)

1. Evidence § 31— construction dispute—third party internal memorandum—not received by witness

In an action arising from the installation of a roof in which plaintiff sought to recover for labor and building materials and defendant counterclaimed for improper installation of the roofing panels, the trial court properly ruled that an internal memorandum from the manufacturer of the roof panels could be used "right now" only to refresh the recollection of plaintiff's manager. Because the witness denied receiving the memorandum, the exhibit was not authenticated, was therefore not admissible, and the witness could not testify about its contents. Defendants were free to try to establish the witness's awareness of potential problems and receipt of the memorandum through oral testimony, since these existed independently of the document itself; even assuming error, defendants failed to make an offer of proof to demonstrate the significance of the excluded testimony and can therefore show no prejudice.

2. Trial § 15— objection to memorandum—judge's comment—no ruling—no prejudice

There was no prejudice in an action arising from a roof installation where defendants attempted to introduce an internal memorandum from the roof manufacturer during *voir dire* examination of their adverse witness and the trial judge responded by observing that the witness testified that "he didn't even remember getting [the memorandum] and if he did, he just threw it away." The trial judge never made a final ruling and was simply commenting on the witness's statement; although failure to rule is an abdication of the judicial function, that failure here did not rise to the level of reversible error because defendants did not try to introduce the exhibit again and never sought a final ruling on its admissibility.

3. Appeal and Error § 49— construction dispute—third party memorandum excluded—no prejudice

In an action arising from the installation of a roofing system in which plaintiff building supply company sought to recover for labor and building materials furnished on open account, defendants counterclaimed for improper installation of the roofing panels, and an internal memorandum from the manufacturer was excluded, defendants could show little if any prejudice from the exclusion of the memorandum because the memorandum would arguably have been of greater benefit to plaintiff than to defendants and because the jury decided in defendants' favor on their counterclaim.

**4. Attorneys at Law § 7.4; Consumer Credit § 1— open account credit agreement—attorney fees and finance charges properly allowed**

    The trial court properly awarded plaintiff attorneys' fees and finance charges on the outstanding balance of the Adams-White account where, in response to a request by an agent of Adams-White, defendants sent Dr. White a new account credit application; Dr. White and his wife, who was not a partner in Adams-White, completed the application; the application provided for finance charges and attorneys' fees in the event the account was not paid; Dr. White requested that the account be opened in the name of Adams-White and sent a letter personally guaranteeing payment of the partnership account; supplies purchased by Adams-White were charged to this account; periodic statements were mailed to Adams-White at Dr. White's address; payments were made with checks drawn by Adams-White; defendant mailed a letter to Dr. White notifying him of its intention to enforce the attorneys' fee provision if the entire balance, with finance charges, was not paid within five days; and no payments were made on the account. Although defendants argue that Dr. White entered into two separate agreements, neither of which provided written evidence of indebtedness, the evidence at trial amply demonstrated that Dr. White opened the account for the partnership and not as an individual account with his wife. Moreover, defendants admitted in their answer and stipulated in a pretrial order that Dr. White acted on behalf of the partnership in opening the account. N.C.G.S. § 6-21.2.

APPEAL by defendants from *John R. Friday, Judge.* Judgment entered 2 December 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 November 1988.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Thomas C. Duncan and Joseph R. Beatty, for plaintiff-appellee.*

*Donaldson, Horsley & Greene, P.A., by Richard M. Greene, for defendant-appellants.*

BECTON, Judge.

Plaintiff, Hedgecock Builders Supply Company of Greensboro ("Hedgecock Supply"), brought this action to recover for labor and building materials provided to defendants on an open account. From judgment in favor of Hedgecock Supply, the defendants, Dr. William H. White, Jr., and Michael G. Adams, individually and as partners of Adams-White Development Company, appeal. Defendants contend that the trial judge erred in (1) limiting the use of an exhibit and refusing to allow the exhibit to be introduced in evidence; (2) awarding Hedgecock Supply attorneys' fees; and (3) awarding Hedgecock Supply finance charges. We affirm.

I

The evidence at trial showed the following.

In June 1986, Dr. White, acting on behalf of Adams-White, opened an account with Hedgecock Supply to purchase building supplies to be used in the construction of two retail buildings. Over the next several months, Adams-White ordered a variety of building materials from Hedgecock Supply, including a roofing system manufactured by Alumax Aluminum Corporation ("Alumax").

The quality of the installation of the Alumax roofing system is central to the parties' dispute. When Adams-White learned that the person installing the roofing panels had been convicted of drunk driving and would be unable to finish the job in time for the scheduled "grand opening" of the buildings, Adams-White requested that Hedgecock Supply complete the installation. Hedgecock Supply agreed.

Hedgecock Supply employees, some of whom worked more than 90 hours a week to meet the Adams-White deadline, were unable to install the panels according to the manufacturer's specifications. The panels were designed to interlock and to be attached with metal clips to a flat substrate of plywood and felt; any deflection in the substrate greater than ¼ inch would impair the panels' function and appearance. The substrates on the Adams-White buildings — not installed by Hedgecock Supply — had a deflection of two to three inches. The unevenness of the substrate forced Hedgecock Supply to place the clips at a distance greater than that recommended by Alumax. Had the clips been placed at the recommended distance, the metal would have bowed, making it impossible for the panels to interlock. Unsightly rippling of the metal occurred as a result of the clip placement, and Adams-White thereafter refused to pay the Hedgecock Supply account.

Hedgecock Supply brought this action seeking payment for labor and materials supplied to Adams-White. Defendants asserted a counterclaim for improper installation of the roofing panels. At trial, a directed verdict was granted in favor of Joanne White, who was not a partner in Adams-White. The jury awarded Hedgecock Supply $111,251.50 for the balance due on the open ac-

count, and awarded the remaining defendants (Mr. Adams, Dr. White, and Adams-White) $1,500 on their counterclaim. Pursuant to the parties' stipulation, the trial judge decided the matter of finance charges and attorneys' fees, awarding Hedgecock Supply $23,223.74 in finance charges and $16,462.73 in attorneys' fees. Mr. Adams, Dr. White, and Adams-White appeal.

## II

[1] By their first assignment of error, defendants contend that the trial judge erred in limiting the use of an exhibit and in refusing to admit that exhibit in evidence.

A. *The Exhibit*

The exhibit in dispute was an interoffice memorandum written by Lyle Otto to Dave Smith, both Alumax employees. Before this suit was initiated, Hedgecock Supply had Mr. Otto inspect the Adams-White buildings because the defendants, asserting that the roofing panels were defective, sought a reduction in price. The memorandum contained the following statements relevant to this appeal:

> . . . George Tippett informs me that Hedgecock Supply was supplied with the Sweet's brochures, as well as the current price book [which contained information on installation], but Jim Hedgecock claims he was not, and a verbal discussion with the installer indicates that the clip spacing might be as much as 3 [feet] o.c. [on center]. *I informed Jim Hedgecock that if the clips are 3 [feet] o.c. he can expect problems with the first serious windstorm. . . .*

(Emphasis added.)

The memorandum indicated that copies were to go to Jim Hedgecock, the manager of Hedgecock Supply, and to George Tippett, Hedgecock Supply's local Alumax representative. Defendants attempted to use the memorandum during cross-examination of Mr. Hedgecock, and tried to introduce it during their voir dire examination of Mr. Tippett, without success.

B. *Limiting Use of Exhibit to Refresh Recollection on Cross-Examination of Jim Hedgecock*

On cross-examination, defendants asked Jim Hedgecock whether he was aware that the roofs were "subject to being

Hedgecock Builders Supply Co. v. White

blown off" as a result of the clip placement. When Mr. Hedgecock said he was not, defendants asked him whether he received a document from Alumax to that effect. Mr. Hedgecock said he did not. The memorandum was marked as an exhibit and handed to Mr. Hedgecock to read. Defendants then attempted to ask Mr. Hedgecock about its *content*, but the trial judge sustained a *general objection*, ruling that the memorandum could be used "right now" only to refresh Mr. Hedgecock's recollection.

As a matter of trial tactics, refreshing recollection is generally considered a direct-examination technique, and impeachment is generally considered a cross-examination technique. This may explain defendants' contention on appeal that the judge's ruling was in error since they sought to use the memorandum (1) to show that Mr. Hedgecock was aware of potential problems arising from the clip placement, and (2) to impeach him regarding that awareness since he denied receiving the memorandum. Ordinarily, these are permissible purposes under the rules of evidence. However, we hold, under the circumstances of this case, that the judge's ruling was proper, since defendants attempted to question Mr. Hedgecock about the *contents* of a document which he said he had never received.

As an initial matter, in light of our conclusion, discussed below, that the judge's ruling was a correct response to a "best evidence" problem, we decline to address the parties' arguments related to the exhibit's hearsay characteristics. The sustaining of a general objection by which evidence is excluded will not be found as error on appeal so long as " 'there is *any purpose for which the evidence would be inadmissible.*' " *State v. Gardner*, 311 N.C. 489, 512-13, 319 S.E. 2d 591, 606 (1984), *cert. denied*, 469 U.S. 1230, 84 L.Ed. 2d 369 (1985) (citation omitted) (emphasis added).

The best evidence rule is implicated only when the *content* of a writing is in question. *See generally* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 1002-1004 (1988); *United States Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 423, 363 S.E. 2d 665, 668 (1988), *disc. rev. denied*, 322 N.C. 329, 369 S.E. 2d 364 (1988). Under the rule, a document is considered the "best evidence" of its contents; secondary evidence of the contents will generally be excluded if the document itself can be produced. *See id.*

The best evidence rule does not prevent a fact which exists independently of a writing, but which is related to it in some way, to be proved through evidence other than the writing itself. *See, e.g., Johnson v. Hooks,* 21 N.C. App. 585, 589, 205 S.E. 2d 796, 799 (1974), *cert. denied,* 285 N.C. 660, 207 S.E. 2d 754 (1974); Brandis, 2 *Brandis on North Carolina Evidence,* Sec. 191 (1988). Thus, for example, defendants were free to ask Mr. Hedgecock questions about his knowledge of problems with the clip placement. However, if a party *elects* to prove an independent fact through the content of a writing, the best evidence rule applies. Thus, if the writing cannot be introduced in evidence, the rule prohibits inquiry into its contents to establish the fact. *See* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 1002, *Comment* (1988); *Brandis,* Sec. 191; *Whitley v. Daniels,* 28 N.C. 480, 482 (1846). *See also State v. Davis,* 284 N.C. 701, 716, 202 S.E. 2d 770, 780 (1974), *cert. denied,* 419 U.S. 857, 42 L.Ed. 2d 91 (1974) (tape recording). Of course, if the related writing is inadmissible, a party may still attempt to establish the independent fact through evidence other than the writing.

In the case before us, the best evidence rule was implicated when defendants handed Mr. Hedgecock the memorandum and asked him what it said. Because Mr. Hedgecock denied receiving the memorandum from Alumax, the exhibit was not authenticated; as a result, it was not admissible, and Mr. Hedgecock could not testify about its contents. *See generally* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 901(a) (1988); *Concrete Serv. Corp. v. Investors Group, Inc.,* 70 N.C. App. 678, 683, 340 S.E. 2d 755, 759 (1986), *cert. denied,* 317 N.C. 333, 346 S.E. 2d 137 (1986). We emphasize again that defendants were free to try to establish Mr. Hedgecock's awareness of potential problems and receipt of the memorandum through oral testimony, since these facts existed independently of the document itself. *See Stickel v. Stickel,* 58 N.C. App. 645, 647, 294 S.E. 2d 321, 323 (1982). We conclude that because defendants asked the witness what the exhibit *said,* the trial judge properly limited its use to refreshing recollection. *See State v. Cobbins,* 66 N.C. App. 616, 622, 311 S.E. 2d 653, 658 (1984) (best evidence rule is not at issue when document is used merely to trigger witness' memory and document is not offered in evidence).

Even assuming, *arguendo,* that the trial judge erred in limiting use of the exhibit, defendants failed after the court's ruling to

make an offer of proof to demonstrate the significance of the excluded testimony; therefore they can show no prejudice by the exclusion. *See* N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 43(c) (1983); N.C. Gen. Stat. Sec. 8C-1, R. Evid. 103(a)(2) (1988); *Currence v. Hardin,* 296 N.C. 95, 99, 249 S.E. 2d 387, 390 (1978); *Wright v. Blue Bird Cab Co.,* 31 N.C. App. 525, 530, 230 S.E. 2d 206, 209 (1976).

C. *Attempted Introduction of Exhibit During Voir Dire Examination of George Tippett*

[2] Defendants tried to introduce the memorandum in evidence during voir dire examination of their adverse witness, George Tippett. The trial judge responded by observing that Mr. Tippett testified that "he didn't even remember getting [the memorandum] and if he did, he just threw it away." Defendants characterize the judge's statements as a denial of their motion; however, in our view, the trial judge never made a final ruling and was simply commenting on the witness' statement. *See Munchak Corp. v. McDaniels,* 15 N.C. App. 145, 147, 189 S.E. 2d 655, 657 (1972) (appeal cannot lie from oral expression of opinion by trial judge).

Although failure to rule is "an abdication of the judicial function," *State v. Chapman,* 294 N.C. 407, 414, 241 S.E. 2d 667, 672 (1978), in most cases that failure does not rise to the level of reversible error. *State v. Hicks,* 79 N.C. App. 599, 601, 339 S.E. 2d 806, 807 (1986). Nor does it here. Defendants did not try to introduce the exhibit again, and never sought a final ruling on its admissibility. "In cases where a more definite ruling is desired, counsel should request the court to make the ruling more clear." *Id.* at 601, 339 S.E. 2d at 808. Accordingly, we hold that in the circumstances of this case, the trial judge did not commit reversible error by failing to rule on defendants' motion.

D. *No Prejudice Shown*

[3] In any event, defendants can show little, if any, prejudice in the limitation or exclusion of the memorandum. First, admission of the memorandum arguably would have been of greater benefit to Hedgecock Supply than to defendants because the memorandum concluded that the panels were correctly installed given the conditions and that problems with the roofs were caused by an uneven substrate. Therefore, defendants fail to demonstrate a "reasonable probability" that the outcome would have been more

favorable to them had the memorandum been admitted in evidence. *See Mayberry v. Charlotte Coach Lines, Inc.,* 260 N.C. 126, 130, 131 S.E. 2d 671, 675 (1963).

Second, and more important, defendants show no prejudice since the jury decided in their favor on their counterclaim for improper installation of the roofs. *See Wooten v. Cagle,* 268 N.C. 366, 370, 150 S.E. 2d 738, 740 (1966) (no prejudice by exclusion of evidence as to issue on which party prevailed); *accord Thomasson v. Brown,* 66 N.C. App. 683, 686, 311 S.E. 2d 628, 630 (1984). The jury awarded defendants $1,500, the amount an expert testified it would cost to remedy the problems with the roof on one of the buildings. Because the award was in accord with the evidence presented, we are unpersuaded that the jury might have awarded defendants a greater amount hand the memorandum been admitted.

This assignment of error is overruled.

III

[4] Defendants next contend that the trial judge erred in awarding attorneys' fees and finance charges to Hedgecock Supply. Defendants' primary argument is that the agreement between Dr. White and Hedgecock Supply was ineffective to authorize the awards. Defendants do not challenge the judge's computation.

A. *The Agreement*

In June 1986, in response to a request by an agent of Adams-White to charge building materials to the partnership, Hedgecock Supply sent Dr. White a new account credit application. Dr. White and his wife, Joanne (who was not a partner in Adams-White), completed and signed the application. That application provided for finance charges and attorneys' fees in the event the account was not paid. When Dr. White was informed that the account would be in his and his wife's name, he asked that it be opened instead in the name of Adams-White, and sent a letter personally guaranteeing payment of the partnership account.

Thereafter, supplies purchased by Adams-White were charged to this account, and periodic statements were mailed to Adams-White at Dr. White's address. Payments on the account were made with checks drawn by Adams-White. When payments ceased, Hedgecock Supply mailed a letter to Dr. White notifying him of its intention to enforce the attorneys' fees provision if the

outstanding balance on the account, including finance charges, was not paid within five days. No payments were made on the account.

### B. *Attorneys' Fees*

Limited authority to impose attorneys' fees upon a debtor, otherwise generally prohibited in North Carolina, is provided by N.C. Gen. Stat. Sec. 6-21.2 (1986). Two requirements must be met before a party may recover attorneys' fees under that section. First, there must be some written "evidence of indebtedness" setting out the obligation to pay attorneys' fees in the event the debt is collected through an attorney. *Id.* Second, the debtor must be notified in writing that the attorneys' fees provision will be enforced if the outstanding balance is not paid within five days. N.C. Gen. Stat. Sec. 6-21.2(5).

Defendants urge us to hold that Section 6-21.2 does not permit an award of attorneys' fees here since, they argue, Dr. White entered into two separate agreements with Hedgecock Supply, neither of which provided "written evidence of indebtedness." The "first" agreement was the written application signed by Dr. and Mrs. White. Defendants assert that that agreement was not evidence of *indebtedness* because the Whites never used the account established by the agreement. The purported "second" agreement, through which the labor and supplies were acquired, was an *oral* agreement with Dr. White and Adams-White, they contend, and therefore cannot serve as *written* evidence of indebtedness. Defendants further argue that the partnership was not properly notified under Section 6-21.2 since Hedgecock Supply mailed the notice to Dr. and Mrs. White at their home address, not to Adams-White. We find these arguments unpersuasive.

It is fundamental that "[e]very partner is an agent of the partnership for the purpose of its business," and that a partnership is generally bound by acts of a partner done to further the business of the partnership. N.C. Gen. Stat. Sec. 59-39(a) (1982). However, "[t]he mere fact that a partnership ultimately benefits from a contract made by a partner *in his own name* does not create a partnership obligation." *Brewer v. Elks*, 260 N.C. 470, 473, 133 S.E. 2d 159, 162 (1963) (emphasis added).

A partnership will be liable for a contract entered in a partner's own name if: (1) "the partner was *acting on behalf of the*

*partnership* in [entering the contract] and was authorized to so act"; or (2) "the partners, with knowledge of the transaction, thereafter *ratified the acts* of their partner." *Id.* at 472-73, 133 S.E. 2d at 162 (emphasis added). Although only one of these criteria is necessary to establish partnership liability, both were satisfied in the case before us.

The evidence at trial amply demonstrated that Dr. White opened the account for Adams-White, not as an individual account with his wife. Moreover, defendants admitted in their answer, and stipulated in a pre-trial order, that Dr. White *acted on behalf of* Adams-White in opening the account. Both the admission and stipulation conclusively establish the matter; defendants are thereby bound on this issue and may not now take an inconsistent position. *See Champion v. Waller*, 268 N.C. 426, 428, 150 S.E. 2d 783, 785 (1966) (admission); *Rural Plumbing & Heating, Inc. v. H.C. Jones Construction Co., Inc.*, 268 N.C. 23, 31, 149 S.E. 2d 625, 631 (1966) (stipulation). Furthermore, Dr. White's actions were *ratified* by Adams-White when the partnership continued to order and pay for supplies on the account. *See generally Stallings v. Purvis*, 42 N.C. App. 690, 695, 257 S.E. 2d 664, 667 (1979).

We conclude that the credit application signed by Dr. White was sufficient "evidence of indebtedness" under Section 6-21.2 to obligate Adams-White to pay attorneys' fees. *Accord W.S. Clark & Sons, Inc. v. Ruiz*, 87 N.C. App. 420, 422, 360 S.E. 2d 814, 816 (1987). We further conclude that Hedgecock Supply complied with the notice requirement of Section 6-21.2 by notifying a partner of Adams-White (Dr. White) that the attorneys' fees provision of the agreement would be enforced. *See* N.C. Gen. Stat. Sec. 59-42 (1982) (notice to any partner regarding partnership affairs operates as notice to the partnership). Accordingly, we hold that the trial judge properly awarded Hedgecock Supply attorneys' fees on the outstanding balance of the Adams-White account.

C. *Finance Charges*

Finance charges up to 18% per year may be imposed upon an overdue open-credit account so long as there is a prior agreement to that effect, or, if there is no prior agreement, the debtor is given notice before the charges are imposed. *See* N.C. Gen. Stat. Sec. 24-11(a) (1986); *Hyde Ins. Agency, Inc. v. Noland*, 30 N.C. App. 503, 506, 227 S.E. 2d 169, 171 (1976). Defendants, relying on their

"two agreements" theory, contend that there was no evidence that the Adams-White partnership agreed to pay interest on amounts overdue.

In the case before us, the credit application completed and signed by Dr. White contained an express provision for finance charges in the amount of 1.5% per month (or 18% per year) on balances more than 30 days past due. In light of our conclusion that Dr. White acted on behalf of Adams-White in entering the agreement with Hedgecock Supply, we hold that the finance charges were properly imposed on the Adams-White account.

IV

In summary, we hold that the error, if any, in limiting or excluding the exhibit was not prejudicial, and that the trial judge properly awarded attorneys' fees and finance charges to plaintiff Hedgecock Supply. Accordingly, the judgment is

Affirmed.

Judges EAGLES and GREENE concur.