HARRELL OIL COMPANY OF MOUNT AIRY, Plaintiff v. ALBERT CASE and wife, BRENDA CASE; ELIZABETH CASE STANLEY and husband, JOHN STANLEY, Defendants

No. COA00-34

(Filed 20 March 2001)

## 1. Partnerships— existence—sufficiency of evidence

The trial court did not err by determining that defendants were partners in the Lowgap Grocery and Grill, which they had purchased for their daughter to run, where defendants owned the building, the land, the inventory, and the equipment; defendants opened the bank account for the business and had authority to draw on this account at all times; defendants invested additional money on various occasions; defendants purchased the business in their own names and invited their daughter to participate rather than making loans directly to her; defendant Brenda Case took out an insurance policy which identified her as doing business as the Lowgap Grocery and Grill; defendant Albert Case executed a power-of-attorney in connection with the sale of the business which gave his daughter the authority to transfer "my" business in Lowgap, North Carolina; each defendant signed the closing statement for the sale of the business; defendants received the profits from the sale of the business; and both defendants testified to their status as partners, Albert describing himself as a "silent partner" and Brenda describing herself as a "sleeper partner." Defendants' ownership did not terminate simply because their daughter took over management of the business.

## 2. Interest— purchase of fuel by store—open-ended account—notice

The trial court did not. err by concluding that plaintiff was entitled to interest on an amount due for fuel purchased by a store where there was only an oral agreement for the delivery of gasoline, but defendants received statements on a regular basis and an invoice upon each delivery, each of which contained a detailed and specific provision regarding the imposition of finance charges.

Appeal by Defendants from judgment entered 23 September 1999 by Judge Charles M. Neaves, Jr. in Surry County District Court. Heard in the Court of Appeals 13 February 2001.

*Faw, Folger, Johnson & Campbell, L.L.P., by Fredrick G. Johnson and Hugh B. Campbell, III, for plaintiff-appellee.*

*Harry B. Crow, Jr., for defendants-appellants.*

HUDSON, Judge.

Plaintiff filed a complaint on 7 November 1995 alleging that the four named defendants were jointly and severally liable, as co-owners of Lowgap Grocery & Grill (the business), for a debt arising from outstanding payments on the purchase of fuels from plaintiff. The trial court held that John Stanley was entitled to a directed verdict because he was not a partner in the business, and that the remaining defendants, Albert Case, Brenda Case, and Elizabeth Case Stanley, were jointly and severally liable to plaintiff in the amount of $48,880.06. Albert Case and Brenda Case appeal from that judgment.

The evidence before the trial court tended to show the following. In November of 1991, Albert and Brenda Case (defendants), a married couple, purchased the business, including the building in which the store was located, the property on which it was situated, and all equipment and inventory. Defendants owned the business through November of 1994, at which time they sold the business to Jerry Hodges. During the time that defendants owned the business, Elizabeth Case Stanley (Ann), defendants' daughter, ran the business, and defendants worked at the business approximately one day a week. Brenda testified that she and Albert had purchased the business with the intention that Ann would run and operate the store, and with the hope that Ann would eventually own the store.

In approximately December of 1992, Joe Harrell, who owns and operates the Harrell Oil Company of Mount Airy (plaintiff), reached a business agreement with Brenda. Pursuant to this agreement, defendants purchased gas tanks, pumps, and related equipment from plaintiff, and plaintiff installed the equipment. Plaintiff then delivered gas each week on consignment, the business sold the gas, and the business paid plaintiff the cost of the gas plus one half of the profit. Brenda acted as the spokesperson and contact person on behalf of the business. There was no written contract setting forth the terms of the agreement, only an oral agreement between Harrell and Brenda. The first delivery of gas by plaintiff occurred in February of 1993, and the final delivery occurred in October of 1994.

HARRELL OIL CO. OF MOUNT AIRY v. CASE

[142 N.C. App. 485 (2001)]

In approximately June of 1993, Harrell was notified by Ann that she would be in charge of the store and that plaintiff should deal with Ann regarding the business relationship rather than Brenda. From that point until the fall of 1994, Harrell testified that his business dealings occurred through Ann. Also beginning in June of 1993, the business fell behind on its payments to plaintiff. By the fall of 1994, the business had a significant unpaid balance. In approximately September of 1994, Brenda contacted Harrell and stated that she wanted to sell the business. After the business was sold, Brenda contacted Harrell again and told him that the business had been sold, and that she had $8,000 remaining after paying the outstanding bills. Brenda offered to give Harrell this sum in exchange for releasing defendants from their debt. Harrell declined, and offered to accept $20,000 for the debt that was due, which offer was not accepted by Brenda.

On 7 November 1995, plaintiff filed a complaint alleging that the four named defendants were jointly and severally liable to plaintiff for the sum of $29,743.67, plus interest from 1 August 1995 at the rate of 18% per year. The four named defendants filed answers denying liability to plaintiff. The trial court found that the business was operated as a partnership from February of 1993 until November of 1994 by defendants and Ann, and that the partnership is indebted to plaintiff in the principal amount of $26,054.16 for purchases of motor fuels and kerosene. The trial court further found that plaintiff is entitled to interest on the principal amount, due at the rate of 1.5% per month from November of 1994 until the date of judgment, and thereafter at the legal rate. Thus, the trial court found defendants and Ann jointly and severally liable for a total of $48,880.06, plus interest thereon at the legal rate from the day of judgment.

[1] On appeal, defendants raise seven assignments of error condensed into two arguments for our review. Defendants first argue that the trial court erred in determining that defendants were partners in the business and are liable to plaintiff on this basis. We note in addressing this issue that Ann has not appealed from the judgment of the trial court and, for this reason, her status as a partner in the business is unchallenged.

The Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.C.G.S. § 59-36(a) (1999). This Court has defined a "partnership" as "a combination of two or more persons, their property, labor, or skill in a common business or venture under an agreement to share

profits or losses and where each party to the agreement stands as an agent to the other and the business." *G. R. Little Agency, Inc. v. Jennings*, 88 N.C. App. 107, 110, 362 S.E.2d 807, 810 (1987). Determination of whether a partnership exists involves examining all the circumstances. *See Peed v. Peed*, 72 N.C. App. 549, 553, 325 S.E.2d 275, 279, *cert. denied*, 313 N.C. 604, 330 S.E.2d 612 (1985). Where a partnership is found to exist, "all partners are jointly and severally liable for the acts and obligations of the partnership." N.C.G.S. § 59-45(a) (1999).

It is well-established that "co-ownership and sharing of any actual profits are indispensable requisites for a partnership," and that "[f]iling a partnership tax return is significant evidence of a partnership." *Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 627 (1990). Defendants argue that they were not partners in the business for three reasons. First, defendants contend that during the time the debt in question accrued, they were not co-owners of the business because Ann had taken full control of the business. Second, defendants contend that there was no agreement to share profits. Third, defendants contend that the existence of tax returns filed by defendants defining the business as a "proprietorship," as well as the absence of any partnership tax returns for the business, support the conclusion that the business was not a partnership. Defendants contend that the circumstances in the case at bar are similar to the circumstances in *McGurk v. Moore*, 234 N.C. 248, 67 S.E.2d 53 (1951).

In *McGurk*, the defendant was the sole owner and operator of the business, and the plaintiff merely made advances and loans of money to the defendant for use in the business. *See id.* at 253, 67 S.E.2d at 56. The only indication of a partnership was the fact that the plaintiff and the defendant shared profits. *See id.* The Court found that the plaintiff's share of the profits was received simply as compensation or interest for the use of his money by the defendant. *See id.* The Court explained that, pursuant to N.C.G.S. § 59-37 (1999), such profit-sharing does not constitute *prima facie* evidence of a partnership. *See McGurk*, 234 N.C. at 253, 67 S.E.2d at 56. Thus, the Court held there was no partnership between the parties.

The instant case is distinguishable from *McGurk* in a number of crucial ways. First, evidence of defendants' ownership interest in the business here is overwhelming. For the entire period in question, defendants owned the building, the property, the inventory, and the equipment. Defendants opened the bank account for the business and

at all times had authority to draw on this account. Defendants invested additional money on various occasions to pay for expenses incurred by the business, such as building payments and inventory. Brenda also took out an insurance policy, which policy identified her as the owner of the policy, doing business as Lowgap Grocery and Grill. In October of 1994, a month prior to selling the business, Albert executed a "Power of Attorney" appointing Ann as his "attorney-in-fact," and specifically giving Ann the authority to transfer to Hodges, the buyer, "my business located in Lowgap, North Carolina." Albert and Brenda each signed the closing statement for the sale of the business in November of 1994. The defendants clearly owned the business and, despite defendants' contentions to the contrary, for which they provide no authority, this ownership did not terminate simply because Ann took over the management of the business in June of 1993. Furthermore, although defendants may have intended that Ann would eventually become the owner of the business, they did not make loans directly to her for her to invest in the business, as did the plaintiff in *McGurk*. Rather, defendants purchased the business in their own names, and invited Ann to participate in the business by helping to manage the store.

Second, despite the absence of an express agreement to share profits or losses, and despite the apparent absence of actual profits during the operation of the business, it is undisputed that when defendants sold the business, they collected and deposited the proceeds, paid the outstanding debts and taxes, and then deposited the remaining $8,000.00 into their own personal checking account. Thus, the evidence indicated that defendants received the profits from the sale of the business. Third, both defendants testified as to their status as partners in the instant case. Albert testified that he was a "silent partner," and Brenda testified she was a "sleeper partner." In sum, the evidence overwhelmingly establishes that defendants were partners in the business and, therefore, the trial court did not err in concluding that defendants are jointly and severally liable, along with Ann, to plaintiff.

[2] Defendants' second and final argument is that the trial court erred in determining that plaintiff is entitled to interest on the principal amount due at the rate of 1.5% per month since November of 1994. A creditor who extends customer credit on an open-end credit account or similar plan may impose finance charges "at a rate in the aggregate not to exceed one and one-half percent (1½%) per month," N.C.G.S. § 24-11 (1999), provided that the debtor is given proper

notice that the creditor intends to impose such finance charges, *Insurance Agency v. Noland*, 30 N.C. App. 503, 506, 227 S.E.2d 169, 171 (1976). Proper notice requires the creditor to notify the person to whom the credit is extended of all the details and circumstances pertaining to the imposition of finance charges. *See id.* Such notification is sufficient if it occurs at the time the credit is initially extended, *see id.*, or if it occurs at any point prior to the time when the amounts on which the finance charges are applied become due, *see Hedgecock Builders Supply Co. v. White*, 92 N.C. App. 535, 544, 375 S.E.2d 164, 171 (1989). G.S. § 24-11 also requires that a bill for the balance due on an account "must be mailed to the customer at least 14 days prior to the date specified in the statement as being the date by which payment of the new balance must be made in order to avoid the imposition of any finance charge." G.S. § 24-11(d).

According to the trial court's fifth finding of fact, "each sales ticket and invoice that Harrell Oil delivered to Defendants for payment contained the following provision: 'NOTE: Bookkeeping and Service charges of 1½% per month will be added on all bills past due, plus reasonable attorney's fees if legal assistance is necessary to collect any past due balance.' " The evidence supports this finding, and, in fact, defendants have not assigned error to this finding. The evidence also showed that the first delivery of gas by plaintiff occurred in February of 1993, while the first time a finance charge was imposed was in June of 1993, and the significant finance charges in question did not actually begin to accrue until October of 1994. Thus, defendants had been receiving statements on a regular basis, and invoices upon each gas delivery, each containing a specific and detailed provision regarding the imposition of finance charges, for approximately four months before any finance charges were imposed, and for well over a year before the significant finance charges in question began to be imposed. Finally, Harrell testified that finance charges were never imposed on unpaid amounts until at least one entire month after the charges came due, and there was no evidence to contradict this testimony. The trial court did not err in concluding that plaintiff is entitled to interest on the amount due at the rate of 1.5% per month since November of 1994.

Affirmed.

Judges GREENE and McCULLOUGH concur.