STILLWELL ENTERPRISES, INC., PLAINTIFF v. INTERSTATE EQUIPMENT COMPANY, ORIGINAL DEFENDANT AND THIRD-PARTY PLAINTIFF v. THE TRAVELERS INDEMNITY COMPANY, AND ROBERT D. KELLY, THIRD-PARTY DEFENDANTS

No. 92

(Filed 3 June 1980)

1. **Appeal and Error §§ 5.1, 45.1— failure to present question in brief—no relief as matter of right—relief as matter of appellate grace**

    Plaintiff's failure to present and argue in its brief to the Court of Appeals the propriety of the trial court's judgment as to attorney fees precluded plaintiff from obtaining relief on this point in the Court of Appeals as a matter of right; however, the Court of Appeals, in the exercise of its general supervisory powers under G.S. 7A-32(c) or pursuant to Appellate Rule 2, could consider on its own initiative the question of the attorney fees award and give relief as a matter of appellate grace.

2. **Attorneys at Law § 7— recovery of attorney fees—necessity for statute**

    A successful litigant may not recover attorney fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute.

3. **Attorneys at Law § 7.4— attorney fees—meaning of "evidence of indebtedness"**

    The term "evidence of indebtedness" as used in G.S. 6-21.2 refers to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money.

Enterprises, Inc. v. Equipment Co.

**4. Attorneys at Law § 7.4— attorney fees—provision in lease of personalty**

A contract for the lease of personalty constitutes an "evidence of indebtedness" within the meaning of G.S. 6-21.2 since the contract acknowledges a legally enforceable obligation by the lessee to remit rental payments to the lessor as they become due in exchange for the use of the property which is the subject of the lease. Therefore, a provision of the lease allowing the lessor reasonable attorney fees should the lease obligation be collected by an attorney after maturity is enforceable under the provisions of G.S. 6-21.2.

DEFENDANT appeals from a decision of the Court of Appeals by *Judge Erwin, Judges Parker* and *Harry Martin* concurring, vacating that part of an order entered by *Judge Thornburg* at the March 1978 Special Session of JACKSON Superior Court which allowed defendant summary judgment against plaintiff for defendant's attorneys' fees on defendant's counterclaim. The decision of the Court of Appeals is reported at 41 N.C. App. 204, 254 S.E. 2d 770 (1979). This Court granted defendant's petition for discretionary review pursuant to G.S. 7A-31 on 23 August 1979. The case was docketed and argued as No. 97, Fall Term 1979.

*Raymer, Lewis, Eisele & Patterson, by Douglas G. Eisele, Attorneys for defendant appellant and third-party plaintiff appellant.*

*Smith, Currie & Hancock, by Bert R. Oastler, Attorneys for plaintiff appellee.*

*Coward, Coward, Jones & Dillard, by Roger L. Dillard, Jr., Attorneys for Robert D. Kelly, third-party defendant appellee.*

EXUM, Justice.

The sole question presented by this appeal is whether a contract for the lease of specific goods may be deemed "evidence of indebtedness" within the meaning of G.S. 6-21.2. We hold that it may and reverse the decision of the Court of Appeals to the contrary.

The original plaintiff, Stillwell Enterprises, Inc., instituted this action against original defendant Interstate Equipment Co., on 22 July 1976, seeking damages alleged to have resulted when a pushloading road scraper leased by Equipment Co. to Stillwell broke in two. Defendant Equipment Co. filed answer denying liability to Stillwell and asserting an affirmative counterclaim for

the recovery of rental arrearages, sales taxes, repair charges, and attorneys' fees allegedly due under the terms of the lease agreement. By way of third-party action defendant sought also to recover from third-party defendant Robert Kelly on a guaranty executed by Kelly for Stillwell's performance under the lease. Defendant dismissed its action against the other third-party defendant, the Travelers Indemnity Company, before the matter was heard in the trial court.

After reviewing the express terms of the lease and the affidavits submitted by defendant, the trial court entered summary judgment dismissing plaintiff's claims and allowing defendant's counterclaim for a total of $24,804.68, including an amount of $2,929 for attorneys' fees. Summary judgment was also entered for a lesser amount against third-party defendant Robert Kelly. On appeal, the Court of Appeals affirmed the trial court's decision in all respects except for the entry of the award for defendant's attorneys' fees. Defendant's appeal to this Court challenges the validity of that decision.

[1] Defendant first contends that since plaintiff failed to address or argue the issue of attorneys' fees in its brief to the Court of Appeals, the Court of Appeals erred in disallowing *ex mero motu* defendant's recovery thereof. Rule 28(a) of the North Carolina Rules of Appellate Procedure clearly specifies that the scope of appellate review "is *limited* to questions . . . presented in the several briefs." (Emphasis supplied.) Thus under this Rule plaintiff's failure to present and argue in its brief the propriety of the trial court's judgment as to attorneys' fees precluded plaintiff from obtaining relief on this point in the Court of Appeals *as a matter of right. State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976); *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977). Nevertheless, the Court of Appeals, in the exercise of its general supervisory powers under G.S. 7A-32(c) or pursuant to App. R. 2,[1] could consider on its own initiative the question of the attorneys' fees award and give relief *as a matter of appellate grace*. The

---

1. Rule 2 of the North Carolina Rules of Appellate Procedure provides that:

"To prevent manifest injustice to a party, or to expedite decision in the public interest, *either court* of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party *or upon its own initiative* . . . ." (Emphasis supplied.)

Court of Appeals having considered the question, it is now properly before this Court by virtue of our further review and the arguments directed to the issue in the parties' new briefs. App. R. 16.

The lease contract provided for monthly rental payments by plaintiff lessee to defendant lessor in the amount of $7,000. Paragraph 21 of the contract further provided that "[t]he lessee further agrees to pay to lessor a reasonable attorney's fee if the obligation evidenced hereby be collected by an attorney at law after maturity." Based upon this provision, Judge Thornburg's entry of summary judgment against plaintiff on defendant's counterclaim for past due lease payments included an award for attorney's fees. The Court of Appeals vacated this award on the grounds that the lease was not the type of agreement which would entitle defendant to recover for attorneys' fees under the general provisions of G.S. 6-21.2. We disagree.

[2] As was stated by Chief Judge (now Justice) Brock in *Supply, Inc. v. Allen*, 30 N.C. App. 272, 276, 227 S.E. 2d 120, 123 (1976), "[t]he jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action." Certainly in the absence of any contractual agreement allocating the costs of future litigation, it is well established that the non-allowance of counsel fees has prevailed as the policy of this state at least since 1879. *See Trust Co. v. Schneider*, 235 N.C. 446, 70 S.E. 2d 578 (1952); *Parker v. Realty Co.*, 195 N.C. 644, 143 S.E. 254 (1928). Thus the general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute. *Hicks v. Albertson*, 284 N.C. 236, 200 S.E. 2d 40 (1972). Even in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor. *Howell v. Roberson*, 197 N.C. 572, 150 S.E. 32 (1929); *Tinsley v. Hoskins*, 111 N.C. 340, 16 S.E. 325 (1892).

In *Tinsley v. Hoskins, supra,* this Court held void and unenforceable a stipulation in a promissory note awarding the promissee "the usual collection fee" in the event of collection of the

note by legal process. The opinion in *Tinsley* indicated that the Court viewed such a provision as an oppressive penalty, a shield for usury, and a device which tended to promote litigation. The *Tinsley* rationale was subsequently applied in *Brisco v. Norris*, 112 N.C. 671, 16 S.E. 850 (1893) (promissory note); *Williams v. Rich*, 117 N.C. 235, 23 S.E. 257 (1895) (deed of trust; "Such stipulations are in the nature of forfeitures and encourage litigation."); *Turner v. Boger*, 126 N.C. 300, 35 S.E. 592 (1900) (deed of trust; such a provision provides an "opportunity for oppression"); *Finance Co. v. Hendry*, 189 N.C. 549, 127 S.E. 629 (1925) (promissory note); and *Howell v. Roberson, supra,* (promissory note). Furthermore, although *Tinsley* and its progeny represent cases adjudicating the validity of attorneys' fees provisions incorporated in promissory notes or security instruments, statements from more recent case law clearly indicate that such provisions are generally deemed unenforceable without regard to the type of instrument in which they appear. Thus, the Court of Appeals in *Credit Corp. v. Wilson*, 12 N.C. App. 481, 183 S.E. 2d 859 (1971), *aff'd* 281 N.C. 140, 187 S.E. 2d 752 (1972), cited *Tinsley* for the proposition that "provisions calling for a debtor to pay attorney's fees incurred by a creditor in the collection of a debt were contrary to public policy and, therefore, unenforceable" and concluded that "[i]t is our view . . . that sound public policy continues to bar the enforcement of such provisions unless the same are clearly and expressly authorized by statute." 12 N.C. App. at 482, 483, 183 S.E. 2d at 859, 860. *See also Construction Co. v. Development Corp.*, 29 N.C. App. 731, 225 S.E. 2d 623, *cert. denied*, 290 N.C. 660, 228 S.E. 2d 459 (1976), expressly rejecting the argument that the common law of this state permitted the contractual allocation of attorneys' fees (in contracts other than notes or security instruments) that may be required by litigation based on the contract.

We conclude, therefore, that the provision in Paragraph 21 of the lease contract between plaintiff and defendant, allowing the lessor reasonable attorneys' fees should the lease obligation be collected by an attorney after maturity, can be enforced only to the extent that the same is expressly allowed by statute. The question before us, then, is whether the lease contract *sub judice* is the type of agreement contemplated within the terms of G.S. 6-21.2. That statute provides in pertinent part:

"Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:

*    *    *    *

(2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provisions shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note, contract or other evidence of indebtedness.

*    *    *    *

(4) As to conditional sale contracts and other such security agreements which evidence both a monetary obligation and a security interest in or a lease of specific goods, the 'outstanding balance' shall mean the 'time price balance' owing as of the time suit is instituted by the secured party to enforce the said security agreement and/or to collect said debt.

(5) The holder of an unsecured note or other writing(s) evidencing an unsecured debt, and/or the holder of a note and chattel mortgage or other security agreement and/or the holder of a conditional sale contract or any other such security agreement which evidences both a monetary obligation and a security interest in or a lease of specific goods, or his attorney at law, shall, after maturity of the obligation by default or otherwise, notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the 'outstanding balance' shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the 'outstanding balance' without the attorneys' fees. If such party shall pay the 'outstanding balance' in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions."

Enterprises, Inc. v. Equipment Co.

It is apparent that G.S. 6-21.2 varies the well-established rule voiding attorneys' fees obligations only in the case of "obligations to pay attorneys' fees upon any note, conditional sale contract, *or other evidence of indebtedness . . . .*" (Emphasis supplied.) A contract for the lease of personalty does not constitute, without more, a "note" or "conditional sale contract." The question remains, however, whether such a contract may be deemed an "evidence of indebtedness" within the meaning of the statute.[2]

In the absence of express legislative guidance, the statutory expression "evidence of indebtedness" is not a well-defined term of art in today's jurisprudence. The proper scope of the term's application must therefore be gleaned from the context of the statute in which it appears and the factual circumstances surrounding the instrument or transaction to which it is sought to be applied. *Cf., United States v. Austin,* 462 F. 2d 724 (10th Cir. 1972), *cert. denied,* 409 U.S. 1048 (loan commitment letter representing enforceable obligation constitutes an "evidence of indebtedness" and hence a "security" for purposes of a prosecution for securities fraud); *Columbus and Southern Ohio Electric Co. v. Peck,* 161 Ohio St. 73, 118 N.E. 2d 142 (1954) (lease of personalty is not such "evidence of indebtedness" as to make it subject to state intangibles tax). In the instant case, as in any case involving statutory construction, we must give that interpretation to the term at issue which best harmonizes with the language, spirit, and intent of the act in which it appears. *Stevenson v. City of Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972).

---

2. In *Construction Co. v. Development Corp., supra,* 29 N.C. App. 731, 225 S.E. 2d 623, the Court of Appeals held that a construction contract did not provide "evidence of indebtedness" within the contemplation of G.S. 6-21.2 so as to allow enforcement of an attorneys' fee provision contained in the contract. More recently, in *Systems, Inc. v. Yacht Harbor, Inc.,* 40 N.C. App. 726, 253 S.E. 2d 613 (1979), the Court of Appeals refused to enforce a fee provision embodied in a lease for personal property on the grounds that the lease contract was not an "evidence of indebtedness" and that "only agreements intended as security are covered" under the statute. Both of these cases were cited by the Court of Appeals in the present case as support for its conclusion that defendant's contract "is not an evidence of indebtedness within the meaning of G.S. 6-21.2." 41 N.C. App. at 211-12, 254 S.E. 2d at 775. However, we note that the discussion in *Construction Co. v. Gibson,* 30 N.C. App. 385, 226 S.E. 2d 837 (1976) clearly applied the provisions of G.S. 6-21.2 to a simple contract. And in *Leasing, Inc. v. Dan-Cleve Corp.,* 31 N.C. App. 634, 230 S.E. 2d 559, *cert. denied,* 292 N.C. 265, 233 S.E. 2d 393 (1977), the opinion definitely indicated that the statute was applicable to a lease for personalty which was not in itself a conditional sale contract. These latter decisions by the Court of Appeals appear to be in conflict with those relied upon by that court in the instant case.

Chapter 562 of the 1967 Session Laws, of which G.S. 6-21.2 is but a part, was enacted to amend certain provisions of the State's Uniform Commercial Code "and other related statutes." The totality of the 1967 amendment package became effective "on the same date as the Uniform Commercial Code, and the fact that the provisions of this act were enacted at a later date than the Uniform Commercial Code shall not be considered in construing the provisions contained herein . . . ." 1967 Session Laws, c. 562, s. 10. Although G.S. 6-21.2 was not itself codified as a constituent section of Chapter 25 of the General Statutes (the Uniform Commercial Code), we believe its legislative history clearly demonstrates that it was intended to supplement those principles of law generally applicable to commercial transactions. As with the Uniform Commercial Code in general, it would appear that some of the purposes underlying the enactment of G.S. 6-21.2 are "to simplify, clarify, and *modernize* the law governing commercial transactions" among the various jurisdictions,[3] and "to permit the continued expansion of commercial practices through custom, usage, *and agreement of the parties* . . . ." G.S. 25-1-102(2)(a) and (b). (Emphasis supplied.) By its limited allowance of that which was formerly prohibited under the common law of this state, *i.e.*, the contractual allocation of attorneys' fees incurred in an action on the debt evidenced in the contract itself, G.S. 6-21.2 clearly validates a new form of contractual remedy. The statute, being remedial, "should be construed liberally to accomplish the purpose of the Legislature and to bring within it all cases fairly falling within its intended scope." *Hicks v. Albertson, supra*, 284 N.C. at 239, 200 S.E. 2d at 42 (construing liberally the allowance of counsel fees under G.S. 6-21.1).

[3] With these considerations in mind, we think the term "evidence of indebtedness" in G.S. 6-21.2 is intended to encompass more than security agreements or traditional debt financing arrangements. It is of course clear that a "note" or "conditional sale contract" is the most common type of "evidence of indebtedness"

---

3. It should be noted that, contrary to North Carolina's traditional disallowance of contractual attorneys' fees, the majority of other jurisdictions now hold that a stipulation in a note or other evidence of indebtedness for a reasonable attorneys' fee is a valid and enforceable agreement. *See generally* Annotation, Validity of provision in promissory note or other evidence of indebtedness for payment, as attorneys' fees, expenses, and costs of collection, of specified percentage of note." 17 A.L.R. 2d 288 (1951 and Supplement).

contemplated by the statute; indeed, it is in connection with these types of agreements that attorneys' fee provisions are most commonly employed. However, the express terms of Section 5 of the statute, along with the terms employed in other provisions, demonstrate that G.S. 6-21.2 applies not only to notes and conditional sale contracts, but also to such "other evidence of indebtedness" as "other *writing(s)* evidencing an unsecured debt" or "*any other* such security agreement[4] which evidences *both a monetary obligation and . . . a lease of specific goods.*" G.S. 6-21.2(5). (Emphasis supplied.) We agree, therefore, with Chief Judge (now Justice) Brock's statement in *Supply, Inc. v. Allen, supra,* 30 N.C. App. at 276, 227 S.E. 2d at 124, that "[t]hese provisions indicate, either explicitly or implicitly, that an evidence of indebtedness . . . is a *writing* which acknowledges a debt or obligation and which is executed by the party obligated thereby." More specifically, we hold that the term "evidence of indebtedness" as used in G.S. 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money. Such a definition, we believe, does no violence to any of the statute's specific provisions and accords well with its general purpose to validate a debt collection remedy expressly agreed upon by contracting parties.

[4] Viewed in light of this definition, defendant's lease agreement with plaintiff is obviously an "evidence of indebtedness." The contract acknowledges a legally enforceable obligation by plaintiff-lessee to remit rental payments to defendant-lessor as they become due, in exchange for the use of the property which is the subject of the lease. The contract, including the provision in Paragraph 21 for attorneys' fees, is in writing and is executed by the parties obligated under its terms. Plaintiff has made no assertion that the contract represents anything less than an arm's length transaction consummated by mutual agreement between the parties. There is no contention that plaintiff was not afforded

---

4. It is unclear just what the legislature intended by the use of the term "security agreement" in this context. The ordinary contract for a lease of personalty does evidence "both a monetary obligation" (the promise by the lessee to pay rent) "and . . . a lease of specific goods." That fact alone, however, does not technically render the contract a "security agreement." Only if the lease is one intended for security will the agreement creating it be deemed a "security agreement." *See* G.S. 25-1-201(37); 25-9-105(1)(h).

the requisite notice under G.S. 6-21.2(5). Under these circumstances, we see no reason why the obligation by plaintiff to pay attorneys' fees incurred by defendant upon collection of the debts arising from the contract itself should not be enforced to the extent allowed by G.S. 6-21.2. Accordingly, the decision of the Court of Appeals vacating Judge Thornburg's award to defendant of attorneys' fees should be and is hereby

Reversed.