FNB SOUTHEAST, Plaintiff v. JOHN B. LANE, Trustee of the CRAIG M. KEEFER TRUST established u/a November 9, 1993, CRAIG M. KEEFER, Trustee of the CRAIG M. KEEFER TRUST, established u/a November 9, 1993, Defendants

No. COA02-1424

(Filed 7 October 2003)

### 1. Pleadings— motion to amend—not timely filed

The trial court did not abuse its discretion by refusing to hear a motion to amend an answer which was not timely filed. N.C.G.S. § 1A-1, Rule 6.

### 2. Trusts— action on guaranty—trustee's authority

The trial court correctly granted summary judgment for plaintiff bank in its action for costs, expenses, interest, and attorney fees arising from a loan agreement guaranteed by a trust. Although defendant contended that the trustee had participated in the transaction in violation of the terms of the trust, the record does not show that the plaintiff had knowledge of the trustee's breach, and plaintiff did conduct a reasonable investigation into the trustee's authority.

FNB SOUTHEAST v. LANE

[160 N.C. App. 535 (2003)]

### 3. Costs— attorney fees—action on indebtedness—guaranty agreement

The trial court correctly awarded attorney fees for plaintiff in an action for expenses, interest, and costs against a trust which was the guarantor of a loan. The guaranty agreement constituted evidence of indebtedness under N.C.G.S. § 6-21.2.

Appeal by defendant from order entered 7 June 2002 by Judge W. Douglas Albright, Superior Court, Guilford County. Heard in the Court of Appeals 26 August 2003.

*Tuggle Duggins & Meschan, P.A., by Kenneth J. Gumbiner and Michael S. Fox, for defendants.*

*Carruthers & Roth, P.A., by Kenneth R. Keller and Norman F. Klick, Jr., for plaintiff.*

WYNN, Judge.

On appeal, Craig M. Keefer, Trustee of the Keefer Trust[1] presents the following questions: (I) Was it an abuse of discretion for the trial court to refuse to hear Keefer Trust's motion to amend its answer; (II) Did the trial court erroneously grant summary judgment in favor of FNB Southeast; and (III) Did the trial court erroneously award attorneys fees to FNB Southeast? After careful review, we uphold the trial court's judgment.

In November 1999, FNB Southeast, a bank, entered into a loan agreement with Apparel Sales and Printing, Inc., a company wholly owned by 3-I, Inc. which in turn was 80% owned by Keefer Trust. In 2000, Apparel Sales and Printing sought modification of the loan agreement in order to release some of the equipment secured by the loan. The parties agreed that the Keefer Trust would guarantee the new loan. Before entering into the collateral substitution agreement, FNB Southeast requested and examined Keefer Trust's financial statements and trust documents and obtained an opinion letter from the trust attorneys regarding the trust's authority to enter into the agreement. Thereafter, FNB Southeast, Apparel Sales and Printing, and Keefer Trust trustee, John B. Lane, executed the modified loan agreement on 17 November 2000. In September 2001, the loan agreement was modified to permit the loan payments for August, September and October 2001 to be made by 31 October 2001.

---

1. In this matter, we refer to defendant as "Keefer Trust".

However, when Apparel Sales and Printing failed to make the payment, FNB Southeast brought the subject action seeking $785,370.14 plus costs, expenses, interest, and attorney's fees. Keefer Trust answered on 21 February 2002.[2]

Thereafter, FNB Southeast moved for summary judgment. However, following a 25 March 2002 deposition and FNB Southeast's production of documents, Keefer Trust moved on 31 May 2002 to amend its answer to include three affirmative defenses. On 4 June 2002, the trial court refused Keefer Trust's motion to amend and granted FNB Southeast's motion for summary judgment. Keefer Trust appeals.

---

**[1]** Keefer Trust first argues the trial court abused its discretion in refusing to hear the motion to amend its answer. We disagree.

Under N.C. Gen. Stat. § 1A-1, Rule 15, after service of a responsive pleading, "a party may amend his pleading only by leave of court or by written consent of the adverse party." Accordingly, Keefer Trust could amend its answer by FNB Southeast's written consent, which was never given, or by leave of court. Although Rule 15 further provides that leave to amend should be freely given, we review the denial of a motion of to amend under the abuse of discretion standard. *See Duncan v. Ammons Constr. Co., Inc.*, 87 N.C. App. 597, 361 S.E.2d 906 (1987).

In this case, the trial court held the motion for leave to amend was not timely filed as of the date of the hearing. Under N.C. Gen. Stat. § 1A-1, Rule 6(d), "a written motion . . . and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court." "In computing any period of time prescribed or allowed by these rules . . . the day of the act, event, default or publication after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included . . . When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and holidays shall be excluded in the computation." N.C. Gen. Stat. § 1A-1, Rule 6.

Here, Keefer Trust filed its motion to amend on Friday, 31 May 2002, and the hearing was held on Tuesday, 4 June 2002. Since the

---

2. Default judgment was entered against John B. Lane, former trustee of the Keefer Trust, on 18 March 2002. He is not a party to this appeal.

motion was not timely filed under Rule 6, we find no abuse of discretion by the trial court in refusing to hear the motion.

**[2]** Keefer Trust next contends the trial court erroneously granted FNB Southeast's motion for summary judgment because a genuine issue of material fact existed as to FNB Southeast's knowledge regarding the trustee's lack of authority to enter into the guaranty agreement.[3]

In its complaint, FNB Southeast sought $785,370.14 plus costs, expenses, interest, and attorney's fees from Keefer Trust based upon the guaranty agreement. In its answer, Keefer Trust admitted that Apparel Sales and Printing executed the loan agreement; FNB Southeast made loans to Apparel Sales and Printing; Keefer Trust trustee, John B. Lane, executed the substitution and guaranty agreements; and Apparel Sales and Printing stopped making payments to FNB Southeast as required.

Nonetheless, despite admitting all of the essential allegations required to collect on a guaranty, Keefer Trust contends summary judgment was improvidently granted because a genuine issue of material fact existed as to whether FNB Southeast knew or should have known that the Keefer Trust's trustee, John B. Lane, participated in the transaction in violation of the terms of the trust. Keefer Trust argues that if FNB Southeast had actual or constructive knowledge of the trustee's breach of the trust agreement, FNB Southeast would become liable to Keefer Trust for any amount paid to FNB Southeast from the trust pursuant to the guaranty and that such liability would negate any liability of Keefer Trust to FNB Southeast under the guaranty.

---

3. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Martin Architectural Prods. v. Meridian Constr. Co.*, 155 N.C. App. 176, ——, 574 S.E.2d 189, 191 (2002). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "An issue is genuine if it can be proven by substantial evidence." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "The movant has the burden of showing that summary judgment is appropriate. Furthermore, in considering summary judgment motions, we review the record in the light most favorable to the nonmovant." *Hayes v. Turner*, 98 N.C. App. 451, 456, 391 S.E.2d 513, 516 (1990). "If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to set forth *specific facts* showing that there is a genuine issue for trial. The nonmoving party may not rest upon the mere allegations of his pleadings." *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982).

An individual or entity who aids or assists a trustee with knowledge of the trustee's misconduct in misapplying assets is directly accountable to the persons injured. *See Abbitt v. Gregory*, 201 N.C. 577, 596-99, 160 S.E. 896, 906-07 (1931); *see also Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 414, 363 S.E.2d 643, 651 (1988) (stating "all persons aiding and assisting trustees of any character with a knowledge of their misconduct in misapplying assets are directly accountable to the persons injured. The wrong of participation in a breach of trust is divided into two elements, an act or omission, which further completes the breach of trust by the trustee, and knowledge at the time that the transaction amounted to a breach of trust or the legal equivalent of such knowledge" is a "general principle of trust law [that] has been applied by the North Carolina courts").

Keefer Trust argues that an affidavit from Lisa Lesavoy, successor trustee of the Craig M. Keefer Trust, and deposition testimony from Laura Pratt, Vice President of FNB Southeast, show that FNB Southeast had actual or constructive knowledge that the trustee was violating the terms of the trust agreement. In her affidavit, Ms. Lesavoy states:

12. . . . Because of the relationship between LANE and SAMSON, SAMSON, and, accordingly, FNB, knew or should have known, prior to making the aforesaid loan, that LANE had caused the Keefer TRUST to advance, loan or invest in excess of $52,770,000.00 in the CHC's representing in excess of eight-four (84%) percent of the net Trust assets and more than eighty-five (85%) percent of the initial value of the Keefer TRUST, thereby extending and continuing the hereinbefore described breach of the express provisions of the governing instrument; and that most of which advances or loans were neither collectible nor secured by a mortgage, security agreement or other collateral so as to secure the Trust and gain priority as against other creditors of the CHC's.

13. After consultation with my counsel, and for the reasons hereinbefore and hereinafter set forth, I verily believe that the execution and delivery of the guaranty by John Lane to Plaintiff was in breach of the express provisions of the subject Trust Agreement and that the Plaintiff, through its officers, servants and agents knew or should have known that said guaranty was in breach of the Trust Agreement.

The affidavit also points out that FNB Southeast received copies of the Trust Agreement and trust financial statements indicating substantial trust assets were committed to closely held corporations. Furthermore, Keefer Trust contends Laura Pratt's deposition testimony that FNB Southeast requested, received and examined the trust agreement and financial statements is an indication that FNB Southeast had actual notice of the trust's requirement that certain percentages of the trust's initial principal value, the principal value of all assets transferred to the trust from the grantor's custodial account, be retained and not distributed without court approval. However, Keefer Trust did not present any evidence that FNB Southeast was aware of the trust's initial principal value. Indeed, neither the three financial statements from 1999 and 2000 nor the trust agreement provide the initial principal value of the trust. Although the trust agreement refers to an annexed Schedule A that describes the property transferred to the trust, the Schedule A is not included in the record on appeal and there is no indication by either party that FNB Southeast ever received a copy of the document. Accordingly, the record fails to show that FNB Southeast had actual notice or knowledge that the trustee was breaching the trust agreement and his fiduciary duty to the trust when he entered the substitution of collateral agreement with FNB Southeast.

Moreover, the record fails to show that FNB Southeast had constructive notice or knowledge of the trustee's breach of the trust agreement. "At common law a person who deals with another whom he knows to be a trustee is put upon inquiry as to the extent of the trustee's powers and charged with knowledge of the facts which a reasonable investigation would disclose. . . . The third party must examine the trust instrument and look to other sources of information in order to satisfy himself that the trustee has authority to enter into the transaction which he is seeking to consummate." *Kaplan v. First Union Nat'l. Bank*, 99 N.C. App. 570, 573 393 S.E.2d 344, 346 (1990).

In this case, FNB Southeast requested and reviewed the trust agreement, three 1999 and 2000 trust financial statements, and received an opinion letter from Haynsworth Baldwin Johnson and Greaves, L.L.C., legal counsel to the trustee, which stated "the guaranty documents and the performance by guarantor of his obligations thereunder do not conflict with or result in a violation of the trust agreement pursuant to which the trust was established and is governed . . . [and that] no registration with, consent or approval of, or

other action by any federal, state, or local governmental authority or regulatory body is required for the execution, delivery, or performance by guarantor of the guaranty documents or any other documents delivered to lender in connection with the lien." Thus, the record indicates FNB Southeast conducted a reasonable investigation into the trust's authority to enter into the substitution of collateral agreement prior to approving the substitution agreement. Accordingly, we uphold the trial court's grant of summary judgment in favor of FNB Southeast.

[3] Finally, Keefer Trust contends the trial court erroneously awarded FNB Southeast's attorneys fees relating to this action because a guaranty agreement does not constitute evidence of indebtedness under N.C. Gen. Stat. § 6-21.2 which provides in pertinent part that:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions . . .

> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the outstanding balance owing on said note, contract or other evidence of indebtedness.

The guaranty in this case was written, signed by the trustee, and, in the event of Apparel Sales and Printing's default, was a legally enforceable obligation to pay money, and therefore, constituted evidence of indebtedness. *See Stillwell Enterprises v. Interstate Equip. Co.*, 300 N.C. 286, 294, 266 S.E.2d 812, 817 (1980) (holding the term "evidence of indebtedness as used in G.S. 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money). Thus, we conclude that the guaranty agreement in this case constituted evidence of indebtedness under N.C. Gen. Stat. § 6-21.2. We, therefore, uphold the trial court's decision to award attorneys fees in this case.

Affirmed.

Judges HUDSON and CALABRIA concur.