GR&S Atlantic Beach, LLC v. Hull, 2011 NCBC 37.

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
|---|---|---|
| | | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | | 11 CVS 5883 |

| | | |
|---|---|---|
| GR&S ATLANTIC BEACH, LLC and GR&S ATLANTIC BEACH HOTEL, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| H. WILLIAM HULL and MARILYN H. HULL, | ) ) ) | |
| Defendants. | ) ) | |

## I. INTRODUCTION

{1} Plaintiffs bring their action based on an Indemnity Agreement with Defendants. Among other relief, Plaintiffs seek to recover attorneys' fees of two types: first, fees associated with administrative procedures or claims presented by third-parties, which the Court in this Order refers to as "Ancillary Fees;" and second, fees associated with litigation between the Parties, which the Court in this Order refers to as "Direct Fees." These claims are now the subject of two motions. Defendants seek to dismiss any claim for any attorneys' fees, or alternatively, to limit those fees to the percentage cap provided by N.C. Gen. Stat. § 6.21.2. Plaintiffs seek leave to amend their Complaint to clarify the circumstances by which they have incurred the various Ancillary Fees, which motion Defendants oppose on the grounds of futility. The motions have been briefed and orally argued in a particularly thorough manner.

{2} The Court must determine its ruling guided by two North Carolina principles regarding the potential recovery of attorneys' fees that are well-settled. Direct Fees incurred in litigation between parties are not recoverable by the successful party in the absence of statutory authorization, whether they are claimed

as costs or damages and whether or not an agreement between the parties expressly allows for the recovery of such fees. *Stillwell Enterprises, Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814–15 (1980).[1]  Any agreement offered to support the recovery of Ancillary Fees must provide for their recovery either expressly or by necessary implication. *Queen City Coach Co. v. Lumberton Coach Co.*, 229 N.C. 534, 535–536, 50 S.E.2d 288, 289–90 (1948); *see also Norfolk S. Rwy. Co. v. Timec Co.*, No. 1:08CV99, 2009 U.S. Dist. LEXIS 105362 at *16.  Defendants concede, solely for purposes of the current motions, that the Indemnity Agreement provides express contractual authority for the recovery of attorneys' fees.[2]  The present motions then require the Court to decide:  (1) does North Carolina allow for the recovery of Ancillary Fees when there is clear contractual agreement but no statutory authority; and (2) does the Indemnity Agreement constitute an "evidence of indebtedness," bringing the Agreement within Section 6-21.2, thereby providing statutory authorization for the recovery of attorneys' fees up to the statutory cap?

{3}  Having considered the briefs, arguments and supporting materials, the Court concludes that it will not at this time make a dispositive ruling on the recovery of either Ancillary Fees or Direct Fees, but will provide the Parties guidance as to the Court's present inclination on Plaintiffs' ability to recovery the two types of attorneys' fees should Plaintiffs be able to present the requisite proof.[3]

---

[1]  A new N.C. Gen. Stat. § 6-21.6, effective October 1, 2011, creates statutory authorization for certain reciprocal agreements allowing the recovery of attorneys' fees between litigants.  That statute does not apply retroactively to the Indemnity Agreement at issue in this litigation, and the Parties agree that the only statutory authorization that might apply in this case is N.C. Gen. Stat. § 6-21.2 (referred to in this Opinion as "Section 6-21.2"), which requires that the Indemnity Agreement be an "evidence of indebtedness" and which is subject to a fifteen percent (15%) cap, measured by the "outstanding balance."

[2]  Plaintiffs indicate an intent to develop an evidentiary record to support a public policy exception from statutory authorization, but Plaintiffs also concede that the creation of any such exception is reserved to the appellate courts.

[3]  Plaintiffs' request for attorneys' fees may technically be more appropriately considered a part of the prayer for relief as opposed to a separate "claim."  To the extent that the issue might be considered more appropriately addressed as a Rule 12(f) motion than a Rule 12(b)(6) motion, the Court has considered the issues appropriately before the Court and it would deny a Rule 12(f) motion on the same grounds and considerations.

Having so determined, the Court allows Plaintiffs' Motion for Leave to Amend Complaint and denies Defendants' Motion to Dismiss. For efficiency, the Amended Complaint shall be deemed to have been filed and served as of the date of this Order, [4] and Defendants' Motion to Dismiss should be deemed to have been made in opposition to the Amended Complaint. The recovery of Direct Fees remains subject to the statutory cap of Section 6-21.2, to be applied to the "outstanding balance" which is yet to be determined pursuant to subsequent proceedings.

> *Poyner Spruill LLP, by Steven B. Epstein and Christopher J. Ayers for Plaintiffs GR&S Atlantic Beach, LLC and GR&S Atlantic Beach Hotel, LLC.*
>
> *Troutman Sanders, LLP, by Gary S. Parsons and Whitney S. Waldenberg for Defendants H. William Hull and Marilyn H. Hull.*

Gale, Judge.

## II. FACTUAL ALLEGATIONS[5]

{4} Plaintiff GR&S Atlantic Beach, LLC ("GR&S") acquired the Atlantic Beach Oceanfront Hotel in Atlantic Beach, North Carolina ("Hotel") in 2004 from entities which one or both Defendants controlled. The Hotel is currently owned by Plaintiff GR&S Atlantic Beach Hotel, LLC ("GR&S Hotel"). For purposes of the

---

[4] Paragraph 11 of the Amended Complaint incorporates the Indemnity Agreement and refers to it as an attached Exhibit A, but the proposed Amended Complaint as filed did not actually attach the Exhibit. The Indemnity Agreement was attached to the initial Complaint and is a part of the record. Plaintiffs may file a revised copy of the Amended Complaint with the exhibit attached, but the Amended Complaint shall be considered to have been filed and served as of the date of this Order. Defendants shall be considered to have moved to dismiss the claim for attorneys' fees as stated in the Amended Complaint or alternatively to strike the request for attorneys' fees, and this Order shall be considered to have denied such motion. Defendants' response to the Amended Complaint shall be twenty (20) days from the date the revised Amended Complaint, with Exhibit A, is served.

[5] The Court does not make findings of fact in connection with a motion to dismiss, and it accepts the allegations of the Complaint as true for purposes of the motion. The Court recites only those facts, taken from the Complaint or Amended Complaint or documents they incorporate, necessary to provide context for its ruling on the current motions. Except as noted, the Court believes the stated facts are not contested or are accepted as true for purposes of this motion to dismiss. *See Capps v. City of Raleigh, 35 N.C. App. 290, 292, 241 S.E.2d 527, 529 (1978).*

present motions, the Court assumes that GR&S Hotel is authorized to enforce all rights that GR&S had growing out of the 2004 purchase and sale.

{5} The Hotel and its neighbor the Island Beach and Racquet Club Condominiums ("IBRC") at relevant times each obtained sewage treatment services from a sewage facility ("Treatment Facility") currently owned or operated by Enviracon Utilities, Inc. ("Enviracon").

{6} The various transactional documents in connection with the 2004 sale included an Indemnity Agreement pursuant to which GR&S was an Indemnitee and Defendants were included among the Indemnitors. The Indemnity Agreement included several provisions related to the Treatment Facility.

{7} Paragraph 1 of the Indemnity Agreement included a broad indemnity by which the Indemnitees are held harmless with regard to the Treatment Facility from "any and all liabilities (including strict liability), claims, actions, causes of action, damages, judgments, liens, losses, injuries, costs and expenses (including reasonable attorneys' fees and specifically including, without limitation of the foregoing, attorneys' fees incurred to enforce the terms of this Agreement) . . ."

{8} The Indemnity Agreement recites that the Treatment Facility at the time of closing required certain repairs or improvements. The Parties refer to the costs for such repairs or improvements as "Legacy Costs." The Parties budgeted and allocated responsibility for the Legacy Costs in the Indemnity Agreement, and Plaintiffs claim that they are entitled to recover amounts they were required to spend in excess of their allocated amount. Paragraph 3 of the Indemnity Agreement defined the scope of the Work required and provided for a Construction Contract to complete such Work. Paragraph 4 of the Indemnity Agreement provides that: "Indemnitors hereby agree to pay (and/or reimburse [Indemnitees]) when due any and all costs and/or expenses incurred in connection with the Work to the extent the aggregate amount of such costs and expenses exceed the Budget Amount."

{9} Paragraph 5 of the Indemnity Agreement provided that if the Indemnitors did not pay or defend a covered claim, the Indemnitees could resolve

such a claim and then recover from the Indemnitors costs "including, without limitation, reasonable attorneys' fees."

{10} One of two tanks at the Treatment Facility collapsed in August 2005, triggering a series of events, including replacement and remediation costs, rate proceedings before the North Carolina Utilities Commission, damage claims involving a nearby mobile home park, and litigation against Plaintiffs by IBRC. Plaintiffs incurred Ancillary Fees in connection with these matters.

{11} Plaintiffs first initiated litigation against Defendants in Carteret County Superior Court, which was voluntarily dismissed without prejudice during trial.[6] They have now instituted this action in Wake County. Plaintiffs claim they are to be indemnified from Direct Fees in connection with their litigation against Defendants to enforce the Indemnity Agreement.


III. STANDARD OF REVIEW

{12} The appropriate inquiry for a Rule 12(b(6) motion is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670−71, 355 S.E.2d 838, 840−41 (1987). The Court may consider documents incorporated by the Complaint. *Marzec v. Nye*, __ N.C. App. __, __, 690 S.E.2d 537, 540 (2010). Plaintiff is entitled to a liberal construction. *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987), *disc. review denied*, 355 N.C. 748, 565 S.E.2d 665 (2002). "When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint." *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC%203.htm.

---

[6] *GR&S Atlantic Beach, LLC v. Atlantic Beach Hotel Ltd. P'ship*, 08 CVS 238 (Carteret County Superior Court). The current action is only against Mr. and Mrs. Hull individually. The prior action included other related defendants.

IV.  ANALYSIS

## A.    Recovery of Ancillary Fees

{13} Settled precedent provides that Ancillary Fees are not recoverable where there is no agreement for their recovery, even if there may be statutory authority.  It is less clear whether Ancillary Fees are recoverable where there is express contractual agreement indemnifying for such fees but where there is no statutory authorization.   The latter issue is the one the Court must now decide.

{14} Analysis of Plaintiffs' claim for Ancillary Fees begins with the North Carolina Supreme Court's opinion in *Stillwell*, 300 N.C. 286, 266 S.E.2d 812 (1980). The Supreme Court defined its issue for decision as follows:  "The sole question presented by this appeal is whether a contract for the lease of specific goods may be deemed 'evidence of indebtedness' within the meaning of G.S. 6-21.2.  We hold that it may and reverse the decision of the Court of Appeals to the contrary."  *Id.* at 287, 266 S.E.2d at 813.   The precise claim for decision was the recovery of Direct Fees by the successful litigation, which required resolution of whether the particular agreement before the Court fell within the scope of Section 6-21.2.  The recovery of Ancillary Fees was not directly before the court.  However, *Stillwell* refers both to "costs," which is often used to refer to Direct Fees and "damages," which may used to refer to Ancillary Fees.  Likewise, the opinion utilizes the term "indemnity."  The *Stillwell* opinion states:

> [t]hus the general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute.   Even in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor.

*Id.* at 289, 266 S.E.2d at 814–815.  The *Stillwell* court found that the lease contract before it constituted an "evidence of indebtedness" within the purview of Section 6-21.2, thereby finding a statutory basis for the recovery of the attorneys' fees.

{15} The *Stillwell* holding clearly bars the recovery of Plaintiffs' Direct Fees unless this Court finds statutory authority for their recovery pursuant to Section 6-21.2. In fact, there was a long line of authority decided before Section 6-21.2 was enacted that precludes such recovery. The question at hand is whether the *Stillwell* holding also bars Ancillary Fees absent such statutory authority. The issue remains significant even if the Court finds the Indemnity Agreement to be an "evidence of indebtedness" within the ambit of Section 6-21.2 because the statute includes a percentage cap, whereas Plaintiffs contend that the agreement for Ancillary Fees provided by the Indemnity Agreement needs no statutory authority and is not subject to any statutory cap.

{16} The Indemnity Agreement in the present case is different than that before the North Carolina Supreme Court in *Queen City Coach*, 229 N.C. 534, 50 S.E.2d 288 (1948), in which the court refused the recovery of Ancillary Fees pursuant to an indemnity agreement which did not expressly authorize their recovery. The Supreme Court's decision rested entirely on the absence of such agreement and never referred to a public policy or general rule prohibiting the recovery of Ancillary Fees in the absence of statutory authorization. The court premised its holding on a construction of the term "loss," limiting the term to the amount of an adverse judgment and not including associated attorneys' fees. *Id.* at 536, 50 S.E.2d at 289.

{17} The Court is not aware of any opinion from the North Carolina Supreme Court that directly compares the rules in *Stillwell* and *Queen City Coach* and squarely addresses whether the North Carolina general rule prohibiting the recovery of Direct Fees absent statutory authority extends to the recovery of Ancillary Fees when the agreement between the parties clearly provides for such recovery.

{18} Plaintiffs and Defendants separately rely on two decisions from the United States District Court for the Middle District of North Carolina addressing the recovery of Ancillary Fees. Defendants rely on Judge Osteen's opinion in *Sara Lee Corp. v. Quality Manufacturing, Inc.*, 201 F.Supp.2d 608 (M.D.N.C. 2002).

Plaintiffs rely on Magistrate Judge Sharp's opinion in *Norfolk Southern*, 2009 U.S. Dist. LEXIS 105362 (M.D.N.C. Nov. 9, 2009). The two opinions both deny Ancillary Fees but through different analyses. The latter does not cite the former. The Court is aware of no decision in which both have been cited and discussed.

{19} *Sara Lee* arose from a contract governed by North Carolina law pursuant to which the defendants undertook manufacturing operations in Mexico. The contract between the parties obligated defendants to comply with Mexican and United States requirements for paying employees and to indemnify plaintiff for any non-compliance. The opinion is silent on whether the agreement expressly provided for indemnity of attorneys' fees. *Sara Lee*, 201 F. Supp.2d at 611. Plaintiff had incurred some legal fees in connection with litigation with the government at the time of the suit, but apparently the matter was open and plaintiff's obligation for such fees was continuing. *Id.* at 614. The *Sara Lee* court noted that *Stillwell*:

> leads to the counterintuitive result that parties cannot recover attorney's fees for which they explicitly contracted, while other contract damages that were not mentioned in the contract or envisioned by the parties *ex ante* may be recovered. However, according to this court's research, this is the status of the law in North Carolina.

*Id.* It appears clear that Judge Osteen recognized a distinction between Ancillary Fees and Direct Fees, but did not find the distinction controlling under *Stillwell*. *Id.*

{20} The *Sara Lee* opinion did not cite or discuss the North Carolina Supreme Court opinion in *Queen City Coach*, or the line of cases following it. In addition to *Stillwell*, Judge Osteen discussed the decision of the North Carolina Court of Appeals in *Kornegay v. Broadwick*, 119 N.C. App. 326, 458 S.E.2d 274 (1995). The *Kornegay* court refused the recovery of Ancillary Fees incurred as a result of clearing an encumbrance on title to real property, and in doing so, questioned whether language in a prior North Carolina of Appeals opinion, *Hinkle v. Bowers*, 88 N.C. App. 387, 363 S.E.2d 206 (1988) allowing recovery attorneys' fees incurred for securing a release as contract damages, confining that language to *dicta*. *Kornegay*, 119 N.C. App. at 327, 458 S.E.2d at 275. Plaintiff in *Sara Lee*

urged that the *Kornegay* would have been decided differently had there been evidence of an express agreement to indemnify for Ancillary Fees, and that *Kornegay* should be read as authorizing Ancillary Fees if there is either contractual or statutory authority for the agreement. *Sara Lee* rejects this reading of *Kornegay*. While referring to plaintiff's argument as "compelling," Judge Osteen concluded that "the weight of the case law clearly supports [defendant's] position that statutory authority is absolutely required to recover attorney's fees." *Sara Lee*, 201 F.Supp.2d at 614–15. The cases cited for this absolute requirement include a string of North Carolina cases dealing with the recovery of Direct Fees. *Id.*

{21} The Court further notes that, after his discussion of the *Stillwell*, Judge Osteen's opinion states that even if attorneys' fees were recoverable, "that this issue is simply not ripe for review at this time." *Sara Lee*, 201 F.Supp.2d at 615. It is unclear whether this meant simply that the amount of fees had not yet been finalized or that Judge Osteen did not yet intend to issue a dispositive ruling on the recovery of Ancillary Fees.

{22} Magistrate Judge Sharp of the Middle District later considered the recovery of Ancillary Fees without citing *Sara Lee.* Magistrate Judge Sharp refused plaintiff Norfolk Southern's claim that it should be indemnified for settlement amounts and attorneys' fees it had incurred in settling a personal injury claim subject to an indemnity contract. There, the indemnity agreement indemnified Norfolk Southern from "judgments, expense and liability" but did not expressly include attorneys' fees. *Norfolk S.*, 2009 U.S. Dist. LEXIS 105362 at *3.

{23} Magistrate Judge Sharp employed a two-step analysis. He first addressed defendant Timec's argument, premised on *Stillwell*, that North Carolina law requires a statutory basis to allow recovery of attorneys' fees. Without extended discussion, Magistrate Judge Sharp held that:

> [T]hese cases do not speak to the enforcement of a provision said to allow the recovery of attorney's fees in an indemnity agreement. Because Defendant does not provide any authority for the proposition that enforcement of such a provision in an indemnity agreement would require a separate statutory basis, this argument is not persuasive.

*Norfolk S.*, 2009 U.S. Dist. LEXIS 105362 at *13. That is, Magistrate Judge Sharp confined the *Stillwell* rule to Direct Fees and did not extend it to Ancillary Fees. Obviously, he did not read *Stillwell* to impose the absolute rule Judge Osteen found.

{24} Magistrate Judge Sharp then turned to the question whether the agreement between Norfolk Southern and Timec should be read to include attorneys' fees by necessary implication. Relying on *Queen City Coach,* Magistrate Judge Sharp concluded that the agreement allowing recovery of "costs" or "expenses" did not include an agreement to recover attorneys' fees, and without agreement Ancillary Fees were not recoverable. *Norfolk S.*, 2009 U.S. Dist. LEXIS 105362 at *16–17.

{25} It seems clear that Magistrate Judge Sharp would have allowed the recovery of Ancillary Fees pursuant to the indemnity agreement without a separate statutory basis if the indemnity agreement had expressly provided for such fees. The opinions in *Sara Lee* and *Norfolk Southern* are then at odds if *Sara Lee* is appropriately read to be a dispositive adjudication of the claim for Ancillary Fees. These cases do not provide clarity on how *Stillwell* should be applied in the case at hand to the claim for Ancillary Fees. Neither does the Court find any clarity in reading North Carolina appellate cases decided after *Stillwell* which cite the case in prohibiting the recovery of Direct Fees.

{26} There was settled authority developed before *Stillwell* over a wide span of years that attorneys' fees are not considered a part of "costs" of the litigation between the litigants. The prior decisions of the North Carolina Supreme Court which *Stillwell* cited as expressions of the general rule dealt only with the recovery of Direct Fees. 300 N.C. at 289, 266 S.E.2d at 814.

{27} This prohibition against the recovery of Direct Fees as an element of costs is grounded on public policy. The North Carolina Supreme Court quoted with approval the expression of that policy by the Supreme Court of Tennessee. "It is not sound public policy to place a penalty on the right to litigate; that the defeated party must pay the fees of counsel for his successful opponent in any case, and

especially, since it throws wide the doors of temptation for the opposing party, and his counsel, to swell the fees to undue proportions." *Parker v. Mecklenburg Realty & Ins. Co.*, 195 N.C. 644, 646–47, 143 S.E. 254, 256 (1928) (quoting *Stingfield v. Hirsch*, 94 Tenn. 425, 29 S.W. 609 (1895)).[7]  Prior to the enactment of Section 6-21.2, the courts consistently cited public policy when disfavoring enforcement of "collection fees" or attorneys' fees clauses in promissory notes and other debt instruments. *Stillwell*, 300 N.C. at 290, 266 S.E.2d at 815 (citations omitted).  In part, the public policy was to prevent penalties and oppression. *Id.* The fifteen percent (15%) cap in Section 6-21.2 reflects the legislature's continuing concern that allowing recovery of attorneys' fees not lead to abuse or oppression.

{28} The preventative public policies constraining an award of Direct Fees to the successful litigant do not necessarily apply equally where the parties to an indemnity agreement provide for the recovery of Ancillary Fees.  The courts continue to have the ability to constrain abuse because recovery is limited to fees that are both necessary and reasonable.  Applying a policy designed to protect the running up of excessive fees is, at least in part, ameliorated in the context of an indemnity agreement that allows the indemnitor to assume the burden of defending the claim that generates Ancillary Fees.[8]

{29} Defendants urge that the state's public policy that should control this case is evidenced by the recent 2011 legislative enactment of the new N.C. Gen. Stat. § 6-21.6 which will allow the recovery of attorneys' fees through reciprocal agreement in certain business contracts.  Defendants argue that such a statutory

---

[7]  Historically, prior to 1868 North Carolina included a tax for fees of attorneys, but the 1868 Code of Civil Procedure modified the system to allow recovery of attorneys' fees from the unsuccessful litigant.  After a brief period in which fixed fees were allowed attorneys, any statutory authorizations for fees as costs were eliminated in 1879, and there was no North Carolina statutory provision authorizing the recovery of attorneys' fees until Section 6-21.2 was enacted. *Wachovia Bank & Trust Co. v. Schneider*, 235 N.C. 446, 454, 70 S.E.2d 578, 584 (1952).

[8]  Here, Plaintiffs complain that Defendants did not accept the tender of defense of the IBRC litigation.  Plaintiffs correctly point out that the North Carolina courts allow the recovery of attorneys' fees from an insurer which breaches its duty to defend. *See, e.g.*, *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 176 S.E.2d 751 (1970).  The Court is reluctant to premise its decision in this case on insurer duty to defend cases which involve the interplay between insurance contracts and a series of statutory provisions that control them.

enactment would only be necessary if it were needed to change prior law, so that the public policy before the statutory enactment must have been against allowing the recovery of fees to be governed by the new Section 6-21.6. The point may be well taken as to fees governed by that new statute, however, the Court does not read the Indemnity Agreement as falling within the context of that enactment. The statute clearly modifies the long-standing prior rule that would bar Direct Fees to the successful litigant seeking to enforce the agreement between the parties, but the statute does not forthrightly and necessarily signify any change in law prohibiting the recovery of fees not directly related to enforcing the business contract between the parties but instead of incurred in ancillary litigation. The Court does not find the statutory enactment to be dispositive.

{30} In summary, although the body of case law addressing the recovery of Direct Fees as an item of costs is extensive and clear, the Court does not find similar clear guidance as to the recovery of Ancillary Fees in an action on an indemnity agreement. The Court has conducted its inquiry through the lens of a Rule 12(b)(6) motion. While Rules 12(b)(6) and 12(f) serve the salutary purpose of eliminating litigation of issues foreclosed by established legal principles, some issues are often better deferred to a motion for summary judgment, even where there appear to be solely as issues of law and may not necessarily require detailed fact finding. *See, e.g., Branch Banking & Trust Co.*, 2005 NCBC 3 at ¶12. In its analysis, the Court has been sensitive to Defendants' suggestion that an early dispositive ruling on the recovery of attorneys' fees might beneficially narrow the case, and that there is particularly good reason to do so where the issues have been clarified by the prior Carteret County case.

{31} However, on balance, if the Court were to issue a dispositive ruling, its present inclination is, subject to proof, to allow recovery of Ancillary Fees without the need for statutory authority and not subject to the statutory cap of Section 6-21.2. The Court does not believe it appropriate to issue such a dispositive ruling against Defendants at this juncture. And, in any event, the Court believes that it may well benefit from further proceedings in this case and perhaps from further

clarifications of law during the pendency of the case. The Court has, however, thought the issue to be of sufficient significance to provide an explanation of the Court's analysis to the extent that it may guide the parties, and it was particularly appropriate to do so considering how well and how thoroughly both sides have presented the issue on the current motions.

{32} Accordingly, Defendants' Motion to Dismiss as relates to Plaintiffs' claim of Ancillary Fees is DENIED.

## B. Recovery of Direct Fees

{33} Defendants' Motion to Dismiss seeks the Court's determination that the Indemnity Agreement is not an "evidence of indebtedness," which would then preclude any recovery of Direct Fees under the holding of the *Stillwell* line of cases. Alternatively, the Motion asks the Court to confirm that Plaintiffs can recover attorneys' fees no greater than fifteen percent (15%) of the "outstanding balance" owed pursuant to the Indemnity Agreement. The Court has indicated in discussion above that it does not believe that the recovery of Ancillary Fees is subject to the statutory cap imposed by Section 6-21.2. As to Direct Fees, Plaintiffs concede that without an exception that only an appellate court can make, the recovery of Direct Fees is statutorily limited to fifteen percent (15%) and recoverable only if the Indemnity Agreement is an "evidence of indebtedness." The issue the Court must then decide on the present motion is whether Plaintiffs have adequately stated facts that would allow a finding that the Indemnity Agreement constitutes such an "evidence of indebtedness" with the scope of Section 6-21.2.

{34} The Court's analysis again begins with *Stillwell*. There the Court was called upon to consider whether a lease of goods was an "evidence of indebtedness" within the meaning of Section 6-21.2. It held that it was, reversing the Court of Appeals. *Stillwell*, 300 N.C. at 287, 266 S.E.2d at 813. The Court reviewed the context of Section 6-21.2 as one of the legislative provisions that modernize commercial practices, including enacting the Uniform Commercial Code. *Id.* at 293, 266 S.E.2d at 817. The Court found Section 6-21.2 to be "remedial" and entitled to

be "construed liberally." *Id.* The Court then stated the standard for determining whether a document is an "evidence of indebtedness" as follows:

> . . . 'an evidence of indebtedness is a *writing* which acknowledges a debt or obligation and which is executed by the party obligated thereby.' More specifically, we hold that the term 'evidence of indebtedness' as used in G.S. 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money.

*Id.* at 294, 266 S.E.2d at 817. The Court held that a lease which requires periodic payments in exchange for use of the property satisfies this standard. *Id.* at 294–95, 266 S.E.2d at 818.

{35} Plaintiffs urge that the decision of whether the Indemnity Agreement falls within Section 6-21.2 is necessarily a fact determination not appropriate to resolve pursuant to a Rule 12(b)(6) motion, citing *Calhoun v. WHA Medical Clinic, PLLC*, 178 N.C. App. 585, 604, 632 S.E.2d 563, 575 (2006).

{36} The Parties' briefs catalog a variety of contracts which have been held to be "evidence of indebtedness," including *Stillwell*, 300 N.C. at 294, 266 S.E.2d at 817 (leases of personal property); *RI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 644 S.E.2d 245 (2007) (leases of personal property); *Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C. App. 535, 632 S.E.2d 192 (2006) (stock purchase agreement); *Capital Realty, Inc. v. Jones*, No. COA06-269, 2006 N.C. App. LEXIS 2408 (N.C. Ct. App. Dec. 5, 2006) (listing agreement requiring payment of commission to realtor); *FNB Southeast v. Lane*, 160 N.C. App. 535, 586 S.E.2d 530 (2003) (guaranty agreement); *Southland Amusements and Vending, Inc. v. Rourk*, 143 N.C. App. 88, 545 S.E.2d 254 (2001) (operator's agreement allowing plaintiff to place amusement game machines at defendant's place of business); *Lawrence v. Wetherington*, 108 N.C. App. 543, 423 S.E.2d 829 (1993) (agreement for installation of vinyl siding); *Nucor Corp. v. Gen. Bearing Corp.*, 103 N.C. App. 518, 405 S.E.2d 776 (1991), *rev'd on other grounds*, 333 N.C. 148, 423 S.E.2d 747 (1992) (stock

purchase agreements); *Hedgecock Builders Supply Co. v. White*, 92 N.C. App. 535, 375 S.E.2d 164 (1989) (credit applications).

{37} Construction contracts have also been held to fall within the purview of Section 6-21.2. Middle District Judge Schroeder's opinion discusses at length his reasoning in concluding that construction contracts fall within the *Stillwell* standard of an "evidence of indebtedness." *United States v. Browne & Associates, Inc.*, 751 F.Supp.2d 813 (M.D.N.C. 2010). This line of cases is apposite in that at least a portion of the Indemnity Contract allocating responsibility for environmental investigation and remediation, and its reference to the defined Work and the Construction Contract (Indemnity Agreement ¶¶3, 4) is similar to those construction contracts Judge Schroeder noted as falling within the ambit of Section 6-21.2.

{38} Certain provisions of the Indemnity Agreement are written using language similar to that used in typical debt instruments clearly falling within the purview of Section 6-21.2, such as promissory notes. For example, the Indemnity Agreement uses language such as "hereby agree to pay" or "paid upon demand." (*See* Indemnity Agreement ¶¶5, 6.)

{39} The Court concludes that Plaintiff has stated a claim sufficient to withstand Rule 12(b)(6) that the Indemnity Agreement is an "evidence of indebtedness" within the purview of Section 6-21.2.

## V. CONCLUSION

{40} Accordingly, the Court determines that the claim for any attorneys' fees need not be stricken from the Complaint or Amended Complaint pursuant to Rule 12(f) and that no claim in the Complaint or Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

{41} It is THEREFORE ORDERED THAT:

(1)     Defendants' Motion to Dismiss is DENIED;

(2)     Plaintiffs' Motion for Leave to Amend the Complaint is GRANTED;

(3)     Plaintiffs shall file a corrected Amended Complaint that attaches Exhibit A;

(4)     The Amended Complaint shall be deemed to have been filed and served as of the date of this Order, the Motion to Dismiss shall be deemed to have been filed against the Amended Complaint, and the Court's Order shall be deemed to be a ruling on the Motion to Dismiss as having been presented against the Amended Complaint;

(5)     Defendants shall have twenty (20) days from the serving and filing of the Amended Complaint with Exhibit A attached in which to otherwise respond to the Amended Complaint.

This 29th day of September, 2011.