D. B. BRISCO & CO. v. J. F. NORRIS et al.

*Deed from Husband to Wife—Action to Set Aside—Fraudulent Intent—Evidence.*

1. Where a husband purchased land with his wife's separate estate, taking deed to himself with her consent and agreeing to convey to her at her request, and did so convey to her just before making a general assignment for benefit of creditors: *Held*, that in an action by creditors to set aside the deed it was immaterial to inquire as to whether the intent of the husband in making the deed to his wife was to hinder and delay his creditors.

2. Costs were properly awarded to the grantee in a deed in an unsuccessful action to set aside such deed.

3. Counsel fees, although provided for in a note, cannot be recovered in an action on the note.

CIVIL ACTION, tried at Spring Term, 1892, of McDOWELL Superior Court, before *Graves, J.*

There was evidence that at the time the merchandise, on which the notes set out in the record were based, was purchased by the defendants, J. F. Norris, Benjamin Aldridge and W. C. Walsh were partners trading under the firm name of J. F. Norris & Co., in the town of Elk Park, Mitchell county, N. C.; that the notes were executed, after repeated extensions of time, for overdue bills of merchandise sold and delivered to the defendants as J. F. Norris & Co.

*Exception 1.* The Court ruled that no recovery could be had by plaintiffs on the bonds under seal signed by J. F. Norris & Co. unless the plaintiffs showed that the articles of partnership gave authority to bind the partnership by a sealed instrument. The plaintiffs excepted.

There was evidence that about January or February, 1889, the firm of J. F. Norris & Co. consisted of J. F. Norris and

Benjamin Aldridge, W. C. Walsh having retired; that in March, 1889, the firm of J. F. Norris & Co. was dissolved, J. F. Norris having sold out to Benjamin Aldridge; that at the same time Norris had agreed with defendant Aldridge to assume all the liabilities of the firm of J. F. Norris & Co.; that in June, 1889, Aldridge, having received a demand from the plaintiffs to pay the amount in controversy in this action, caused his clerk (one Frank Nanner) to write to the plaintiffs a letter in which he said he was not aware that J. F. Norris & Co. owed plaintiffs, and asked indulgence till he could look into the matter, and said he would pay cash for goods he bought; that the claims in controversy were placed by plaintiffs for collection in the hands of one Folsome, of Elizabethton, Tenn.; that on July 15, 1889, Folsome went to Elk Park to confer with the defendant Aldridge, who made a further appointment to meet Folsome a day or two later; that Elk Park is distant from Bakersville, the county-seat of Mitchell, twenty-four miles. The deed of Benjamin Callaway, *alias* Aldridge, to Millie, his wife, was introduced, bearing date July 10, 1889, on the back of which was the following entry: "Received for registration July 15, 1889, 8 : 30 P. M., registered 10 : 30 P. M., book ——. L. H. Green, Register of Deeds." It was in evidence that Benjamin Aldridge, *alias* Callaway, was in the town of Bakersville on the evening of the 15th, the same day on which he was in conference with H. M. Folsome at Elk Park in reference to plaintiffs' claim. The deed to Millie is probated by acknowledgment of Aldridge the same day. The assignment of Benjamin Aldridge bears date July 20, 1889. P. J. Brisco, one of the plaintiffs, testified that the plaintiffs' firm had refused to sell Norris & Walsh before Aldridge became a member of the firm of J. F. Norris & Co.; that they had learned through the usual sources of information, Dun & Co., T. D. Vance and

others, that Aldridge was a man of means, worth several thousand dollars in real estate, and credit given to the firm of J. F. Norris & Co. was solely in consideration of Aldridge's reputation financially. It was in evidence that Aldridge had held title to these lands in his own name for twenty or twenty-one years. Walsh, one of the defendants, testified that he never heard Aldridge claim that these lands belonged to his wife till the time of this transfer to her.

One Jones, a witness, testified that he lived near Aldridge ; is a merchant; Aldridge was considered in the community to be worth five or six thousand dollars; never knew that any one had any claim on Aldridge's lands until after the assignment and deed to Millie Aldridge; that he had reported Aldridge to the plaintiffs to be worth six or seven thousand dollars.

The answer of the defendant Aldridge declares that it was agreed that the title to these lands should be to him as trustee for his wife and her children, and that he should convey the same to her and her heirs when she should desire the same.

In view of all these circumstances plaintiffs requested his Honor to charge the jury on the issues as follows: That if the jury should believe that the land, or any portion of it, was bought with the defendant Millie's money, and she and defendant Benjamin agreed that the deed should be made to Benjamin, and be held by him for his benefit and convenience, and to give him credit, and that he agreed to convey to her if, at any time, she should be in danger of losing the land, and she allowed her husband to hold the land in his own right, and upon the faith and reputation of which he did obtain credit, then a conveyance to her, by her husband, will be fraudulent and void as to such debts as he was enabled to make and did make upon such reputation. If you should find that the debt sued on in

43—Vol. 112

this case was made and the credit extended upon the reputation that the land belonged to defendant Benjamin, and the defendant Millie having allowed him to hold the land until that debt sued on was created, and then, to prevent the creditors of Benjamin from getting the land to satisfy such debts, demanded and received the deed under such circumstances, you would find the second issue, Yes. His Honor refused to so charge, and plaintiffs excepted.

Counsel for the plaintiffs argued to the jury that even if the proceeds of the sale of the separate property of Millie Aldridge had purchased the lands in controversy, and the titles were, by her consent, made to her husband, there being no pretense of mistake, surprise or ignorance alleged or proven, and that by means of this ostensible ownership of lands of the value of five or six thousand dollars Millie Aldridge intended or agreed to give the defendant Aldridge a false and fictitious financial standing to enable him thereby to obtain credit, and if he should become embarrassed he should convey to her, that, notwithstanding her separate estate had been used in payment for the lands, the deed from Aldridge to his wife would be fraudulent and void as to those creditors who had been so mulcted.

Upon the issues submitted the jury found in response to the first that the defendant Aldridge was liable for the debt claimed. Upon the second issue the finding was that the deed from Aldridge to his wife was not made with intent to hinder, delay and defraud his creditors. In response to other issues the jury found that the lands which were embraced in the deed from Aldridge to his wife had been purchased with her separate estate and moneys, and the deeds therefor were made to him with her consent and upon his agreement to convey to her whenever she requested.

There was judgment for the amount of plaintiffs' debt against the defendants other than Mrs. Aldridge, as to whom

the judgment was that she go without day, etc., and recover her costs. Plaintiffs appealed, assigning error as follows:

1. It was error in his Honor to refuse to grant the prayer for instructions made by the plaintiffs' counsel as set out in bill of exceptions, the evidence disclosing a trend of circumstances from which the jury might infer an agreement that the title was to remain in the defendant Aldridge by consent of his wife in order to enable him to obtain credit, and to be conveyed to her when he should become embarrassed. And it was error to refuse to submit the inference arising from the circumstances proved before the jury, and not to allow them to pass upon these facts.

2. It was error for his Honor, on the argument of counsel for plaintiffs upon this point, to charge the jury that there was no evidence to show such agreement or understanding between Aldridge and his wife, whereas the facts testified to in the case might well justify the inference that there was such an understanding.

3. It was error to adjudge costs in favor of Millie Aldridge against the plaintiffs, she having joined issue with her husband in denying his liability for debt due plaintiffs. Costs were, of course, due plaintiffs on the first issue, and his Honor erred in holding that the plaintiffs could not recover the ten per cent. counsel fees provided for in the note executed by J. F. Norris & Co. to the plaintiff. This contract was supported by a valuable consideration, to-wit, extension of time, and could be supported as a simple contract obligation, notwithstanding it was evidenced by notes under seal.

4. It was error to hold that one partner could not bind his co-partners under seal, unless plaintiff showed that the articles of co-partnership were under seal.

*Messrs. Gudger & Pritchard* and *P. J. Sinclair,* for plaintiffs (appellants).

*Mr. W. H. Malone,* for defendants.

BURWELL, J. : The jury have found that the land conveyed to his wife by Benjamin Aldridge by his deed of July 10, 1889, was purchased with her separate estate and moneys, and the title was put in him by consent of his wife upon an agreement then made that he would convey said land to her when requested. Upon this state of facts the husband held the land as trustee for the wife (*Lyon* v. *Akin,* 78 N. C., 258; *Kirkpatrick* v. *Holmes,* 108 N. C., 206), and her rights in it were in effect the same before the execution of the deed, which is alleged to have been made with fraudulent intent, as they were after its execution and delivery. Its effect was merely to vest in her the legal title to the land of which she was before the equitable owner, her title being such as to enable her, upon the strength of it, to recover the land from her husband or from any one purchasing of him with notice of her rights (*Lyon* v. *Akin, supra*), or from any one who had bought the land at a sale under execution against her husband, for such purchaser would acquire only such title as the husband had.

Hence, these facts being established, it became immaterial to inquire with what intent the deed was made and accepted, for the substantial rights of none of the parties have been changed thereby.

We agree with his Honor that there was no evidence that Millie Aldridge consented that the title to this land might remain in her husband in order that he might thus acquire a fictitious credit, and be enabled to defraud the plaintiffs. There was no attempt to prove any act or word of hers that in any way could affect her title or estop her

from asserting it against the plaintiffs or any other of her husband's creditors.

The first and second assignments of error cannot, therefore, be sustained.

There was no error in adjudging costs in favor of the *feme* defendant. *The Code*, §527.

The plaintiffs had judgment for the amount of the debt claimed by them, with interest. Hence it is not necessary to consider the fourth assignment of error. They were not entitled to recover the ten per cent. for counsel fees provided for in the note, even if it had been adjudged to be the note of the defendant Aldridge. *Tinsley* v. *Hoskins*, 111 N. C., 340. Affirmed.