## BRYANT v. KLATT et al.

(District Court, S. D. New York. July 18, 1924. On Reargument, July 28, 1924.)

1. **Trusts** &#x25CB;=17, 18(1)—**Trustee may recognize and execute trust, though not legally created.**

While under Real Property Law N. Y. § 242, a trust cannot be created by parol, a grantee to whom property is conveyed by an absolute conveyance, but with the intention that it shall be held in trust, may voluntarily recognize the trust and convey the property in execution of it, and, unless estopped, to the exclusion of his creditors.

### On Reargument.

2. **Bankruptcy** &#x25CB;=140(3) — **Estoppel to deny ownership of property.**

Where bankrupt's father conveyed real estate to him and his brother by absolute deed, but intending that it should be held in trust for him, a statement, made by bankrupt to a creditor while the title stood in his name, that he owned a half interest in the property, *held* to create an estoppel, which precluded him from conveying the property in execution of the trust, which was invalid in law, except subject to a lien in favor of such creditor for so much of his claim as was for goods sold bankrupt after the statement was made, and in reliance thereon.

In Equity. Suit by Walter L. Bryant, trustee in bankruptcy of Fred H. Ruggles and August O. Klatt, individually and as partners comprising the firm of the R. & K. Bakery, against August O. Klatt and others. Decree for complainant establishing lien.

Final hearing on bill in equity to set aside a conveyance of real estate by a bankrupt on the eve of the filing of the petition. It was agreed that, if the property belonged to the bankrupt at that time, the conveyance was void. The circumstances were as follows:

The bankrupts were a firm, consisting of August O. Klatt and his sister's husband,

one Ruggles. August J. Klatt was the father of August O., and had as children besides him and his sister, Mrs. Ruggles, another son, Charles. The father had fallen into enmity with his son-in-law, Ruggles, who he feared might take some action against him. He was seized in fee of a tenement in the city of New York on which he lived with August O. and the Ruggleses. Unknown to the grantees, August J. Klatt, on June 1, 1923, executed a deed, recorded June 3, 1923, of this parcel of land to his sons, Charles and August O., supposing that thus he could defeat any possible machinations of his son-in-law, Ruggles.

The grantees learned nothing of the deed until June 27th, when they were asked to sign a notice to Ruggles that he must vacate on August 1st. At that time the father told the sons, as the reason why he had conveyed the property to them, that it was. to be held in trust for him by them, he paying taxes and the interest upon a mortgage. The sons signed the notice to vacate and collected one month's rent, after which August O., finding himself on the verge of bankruptcy, conveyed his interest to Charles.

Paul M. Crandell, of New York City, for plaintiff.

James E. Smyth, of Brooklyn, N. Y., for defendant Klatt.

LEARNED HAND, District Judge (after stating the facts as above). [1] I am satisfied that this old gentleman had no intention of conveying the beneficial interest in his property from himself to his sons, but that the deed was a device of an incompetent lawyer to protect him against his son-in-law. It is true that, in the nature of things, the evidence could not be disputed, but it is antecedently probable in itself. It is not likely that he meant to strip himself of his life's earnings, and put his property out of his hands, for no reason at all. It so happens that, if the trust which he attempted so to create had been expressed in the deed, or in any adequate writing, it would have been void in New York under section 93 of the Real Property Law (Consol. Laws, c. 50), which vests all "dry" trusts at once in the cestui que trust, just as the statute of uses executed uses. The trust attempted not being one of those allowed under section 96, and the cestui que trust being the settlor himself, the deed would have been a nullity.

However, the trust was not in writing, and was therefore void under section 242.

It is therefore the plaintiff's position that August O. Klatt took a fee as tenant in common with his brother, free and clear of all equitable interest, and leviable in the interests of his creditors. The conveyance on the eve of bankruptcy was, they claim, as much a fraud on them as though the land had been bought with their money. Perhaps this ought to be the law, but in fact it is not. While as against the grantee the cestui que trust has no rights which he can enforce, still if the grantee chooses to recognize his "moral" obligation, as it is called, his creditors may not complain. The courts seem to have been able to endure the spectacle of a man who in his own interest defrauds a confiding fellow, but to stick at allowing the same privilege to his creditors. Whatever may be thought of the logic of the distinction, it is well settled. Gardner v. Rowe, 2 Sim. & Stn. 346, affirmed by Lord Lyndhurst 5 Russ. 258; Silvers v. Potter, 48 N. J. Eq. 539, 22 A. 584; Iauch v. De Socarras, 56 N. J. Eq. 538, 39 A. 370; Desmond v. Myers, 113 Mich. 437, 71 N. W. 877; Hays v. Reger, 102 Ind. 524, 1 N. E. 386; Cresswell v. McCaig, 11 Neb. 222, 9 N. W. 52; Brisco v. Norris, 112 N. C. 671, 16 S. E. 850. The same rule was laid down in Davis v. Graves, 29 Barb. (N. Y.) 480, Lowry v. Smith, 9 Hun (N. Y.) 514, and Dunn v. Whalen, 66 Hun, 634, 21 N. Y. S. 869. The only exception I have found is an early Massachusetts case. Smith v. Lane, 3 Pick. 205. Therefore I hold that August O. Klatt's conveyance to his brother in recognition of the fiduciary origin of his estate was not a fraud upon his creditors, even though the trust rested in parol, and though August J. could not have enforced it against him.

The plaintiff further argues that he may win by estoppel. This rests upon a talk between Lang, the agent of a creditor, Coulter, and August O. Klatt, in which Klatt is supposed to have said that he had a one-half interest in the house he lived in, which was the locus in quo. This talk Lang places some time before June 9th, and the theory is that the goods sold after it were sold on the faith of August O.'s supposed title. These goods amounted in all to $943.10. Of them only $300 were sold after August O. Klatt says that his father told him of the deed. Assuming that the trustee is vested by section 70e (Comp. St. § 9654) with the rights of Coulter to avoid the deed, I think that the circumstances do not justify the relief. It may be that the sons learned of the

deed earlier than August O. admits. Indeed Charles J. says that it was early in June, though he also says it was after he signed the notice to quit. But the date makes no difference, I think, because I do not see why the equity arising from Klatt's declaration to Lang should be superior to that arising on the parol trust. If the trust had been enforceable, no one would say that any declaration of the trustee could affect the rights of the cestui que trust.

But in cases of this kind apparently the law treats the trust as valid so long as the trustee does not choose to insist upon the absence of any writing. Foote v. Bryant, 47 N. Y. 544. Perhaps a creditor who has been deceived by him has a greater complaint than a creditor who is merely as such entitled to pursue his assets, but at most it is a case of two conflicting equities, the creditor's and the beneficiary's, and there is no reason to prefer the creditor. In such situations it is always the practice of the courts to let the legal title prevail. Certainly there can be no propriety in saying that the beneficiary, even though he be also the grantor, is privy to the representation. Indeed, I have much doubt whether, at the time when August O. Klatt made the statement, he knew of the deed, or whether it could be said to have been then accepted. If so, under no principle of estoppel could the lien have been for more than $300, the price of the last parcel of goods. But I do not stand upon that distinction; I place my decision on the doctrine I have mentioned.

Bill dismissed, but without costs.

## On Reargument.

The first point is the distinction between the New York statute of frauds and those in many other jurisdictions. The New York statute provides that no trusts shall be created without writing; the others, that they shall not be enforced. The distinction is thoroughly casuistical. If the trustee cannot be legally compelled to recognize the trust, his recognition is as voluntary as though no trust was created at all. In either case it is really a question of how far the courts will consider the moral obligation of the trustee as binding on his creditors. The whole doctrine is, strictly speaking, anomalous, and it seems to me a mistaken notion to graft upon it purely verbal and sophistical distinctions which ignore the real reason of it; i. e., the unwillingness of the courts to allow a man's creditors to profit by what was truly never his at all. Therefore

I decline to change my ruling as to this point.

[2] The second point rests upon a case in New York, Fritz v. Worden, 20 App. Div. 241, 46 N. Y. S. 1040, and two in New Jersey, Budd v. Atkinson, 30 N. J. Eq. 530, and Besson v. Eveland, 26 N. J. Eq. 468, which recognize a superior equity in the creditor, who has acted on the faith of the trustee's ownership over the equity of the beneficiary by parol. I really fail to see any principle on which this can be established, though, as I have said, the whole doctrine is so anomalous that one may be prepared for anything. For the reasons I gave originally, I am disposed to treat the equities as equal, but here are three authorities which hold otherwise, and although Hegstedt v. Wysiecki, 178 App. Div. 733, 165 N. Y. S. 898, is readily distinguishable, it recognizes the rule. While these decisions are not authoritative on me, I think I ought to take them as binding. In passing, I may add that Fritz v. Worden, supra, appears to recognize the validity of the parol trust in general as against creditors who can claim no estoppel.

Hence it becomes necessary to take a more positive position upon the evidence than I did in my first opinion. Did August O. Klatt, while he held title, tell Lang that he owned half the house, and did Coulter sell him the three last bills of goods on the faith of that representation? Unless this took place after August O. Klatt had title, and knew he had title, it would not be an estoppel. August J. could not be bound by a declaration made before he had given any color for the making of it. Lang's memory was naturally hazy about dates, but he is sure that he had the talk before the bill of goods of June 9th was delivered. By implication it was after May 26th, because it was the bill of that day which, added to the rest, caused his concern. Now it seems to me rather curious that August O. Klatt should have told Lang that he owned one-half, and not the whole, property as an inducement to give him credit, if he merely intended a fraud upon Lang. He did own one-half between June 3d and June 9th in a sense which he might well have claimed it, without supposing himself to be cheating Lang, though he did in good morals owe a duty to his father to guard it for him.

Klatt denies that he knew of the deed till June 27th, and he is in some measure borne out by the fact that on June 7th it was Weiss, and not Charles J. and August O.

Klatt, who collected the rent, something more consonant with the Klatts' story than with Lang's. Further, while Klatt's denial is not as categorical as one might wish, he does deny that he ever told any one in June that he had a half interest in the property.

On the whole, I believe that Lang's story is the more credible, and that Klatt knew of the deed before June 9th, perhaps only a day or two. I cannot account otherwise for the curious compatibility between Lang's story and the truth. Hence I hold that to the extent of $943.10 the trustee has established his lien.

A decree may therefore pass, declaring a lien upon a one-half interest in the tenement to the extent of $943.10, with interest from the several dates of delivery.