Brown v. Onslow Bay Marine Grp., LLC, 2022 NCBC 84.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

ROBERT L. BROWN, JR.,

Plaintiff,

v.

ONSLOW BAY MARINE GROUP, LLC,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 2469

**ORDER AND OPINION ON DEFENDANT ONSLOW BAY MARINE GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT**

1. **THIS MATTER** is before the Court on Defendant Onslow Bay Marine Group, LLC's ("OBMG" or "Defendant") Motion for Summary Judgment (the "Motion") filed on 13 September 2022. (*Brown II*, ECF No. 43.) The Motion requests that summary judgment be granted in favor of OBMG on all claims brought in two cases which were consolidated at the time the Motion was filed. Because the cases have since been deconsolidated,[1] this Order and Opinion addresses the Motion only to the extent it seeks judgment as to the claims brought by Robert L. Brown, Jr. ("Brown" or "Plaintiff") in this action ("*Brown II*") but not the single claim brought in a companion case initiated in Onslow County Superior Court bearing case number 21 CVS 1794 ("*Brown I*").

---

[1] While these cases were consolidated, *Brown I* was designated as the "master file." As a result, all briefs and exhibits relevant to the Motion were filed in *Brown I*. Unless otherwise noted, citations to the record in this Order and Opinion refer to filings in *Brown I*.

2.     For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

*Poyner Spruill LLP, by Nicholas J. Ellis and Dylan Castellino, for Plaintiff Robert L. Brown, Jr.*

*Murchison, Taylor & Gibson, PLLC, by Andrew K. McVey, and Bailey & Busby, PLLC, by Stephen C. Bailey, for Defendant Onslow Bay Marine Group, LLC*

Robinson, Judge.

## I.     INTRODUCTION

3.     This action arises out of a dispute over three loans made by Brown to OBMG between 2011 and 2017 for the construction of molds used in boat manufacturing. Each loan was evidenced by a respective promissory note in favor of Brown. Brown contends, and OBMG denies, that OBMG breached all three promissory notes. Brown seeks to recover sums due and owing under the three notes, plus interest, attorneys' fees, and costs.

## II.     FACTUAL BACKGROUND

4.     The Court does not make findings of fact when ruling on motions for summary judgment. "[T]o provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

5.     OBMG is a manager-managed LLC engaged in the manufacture of center console offshore and tournament edition boats. (Knight Aff. ¶ 3, *Brown I* ECF No. 44.1.)

6.    Brown is the majority member of On Point Offshore, LLC ("On Point"). Brown and/or On Point own a 24.5% interest in OBMG, and the parties dispute whether such interest conveys membership rights or is merely an economic interest. (*See* Knight Aff. ¶ 11.)

7.    John Bradley Knight, Jr. ("Knight") is the majority member and member-manager of OBMG, possessing a 51% interest in OBMG.  (Knight Aff. ¶¶ 1,7.)

8.    On 26 October 2011, Knight, on behalf of OBMG, executed a $100,000 promissory note in favor of Brown (the "$100,000 Note").  The $100,000 Note stated that the purpose of the loan was to "construct a mold to complete the Onslow Bay 32 Offshore Edition."[2]  (Compl. Ex. B at 2, *Brown II* ECF No. 2 ["$100,000 Note"].)  The loan was for interest only for a period of three years.  If, at the end of the three-year period, the principal was not paid in full, the loan would then be termed out for a period of no longer than three years at seven (7%) percent per annum.  ($100,000 Note ¶ 2.)  In addition to principal and interest, OBMG agreed to pay a royalty of $977.20 per part made from the mold, with the royalty due within 30 days of the boat's delivery to the customer.  ($100,000 Note ¶ 3.)

9.    On 12 April 2012, Knight, on behalf of OBMG, executed a $50,000 promissory note in favor of Brown (the "$50,000 Note").  The $50,000 Note's stated purpose was to "construct a mold to complete the Onslow Bay 32 Offshore Edition." (Compl. Ex. C at 2 ["$50,000 Note"].)  The loan was to be interest only for a period of 15 months. At the end of the 15-month period, the principal was to be rolled over into

---

[2] The numbers 32 and 40, as used herein, refer to the length in feet of the finished boat.

the price of a boat to be purchased by Brown. ($50,000 Note ¶ 2.) In addition to principal and interest, OBMG agreed to pay Brown a royalty of $488.60 per part made from the mold, with the royalty due within 30 days of the boat's delivery to the customer. ($50,000 Note ¶ 3.)

10. Following the execution of the $100,000 and $50,000 Notes, Brown agreed to accept repayment of principal on both notes in the form of a $150,000 credit toward his purchase of a 40' boat from OBMG. (Brown Dep. 70:7.) Brown testified that this agreement, made prior to the instant lawsuit, relieved OBMG of its obligation to repay principal on both the $50,000 and $100,000 Notes. (Brown Dep. 70:8–9.)

11. On 14 November 2017, Knight, on behalf of OBMG, executed a $300,000 promissory note in favor of Brown (the "$300,000 Note"). The $300,000 Note stated that the purpose of the loan was "to construct a mold to complete the Onslow Bay 40 Offshore Edition." (Compl. Ex. A, 2 ["$300,000 Note"].) The loan was to be interest only for a period of 15 months. At the end of the 15-month period, the principal was to be rolled over into the price of a boat to be purchased by Brown. ($300,000 Note ¶ 2.) OBMG agreed to pay Brown a royalty of $3,000 per part made from the mold. ($300,000 Note ¶ 3.)

12. All three notes shared the following relevant terms:

a. Interest was due and payable at seven (7%) percent per annum, (¶ 2);

b. Royalties were to be paid until principal and interest were paid in full, and then for a period of time equal to the amount of time for construction of the mold in question, (¶ 3);

c. Upon completion of the mold in question, OBMG was to file a Form UCC-1 with the North Carolina Secretary of State to secure ownership of the mold to the holder of the note, (¶ 7);

d. Brown could accelerate the loan without further notice upon the occurrence of either of the following:

    i. OBMG defaulted on payment of principal or interest and such default was not cured within ten days from the due date, or

    ii. OBMG defaulted under the terms of any instrument securing the note and default was not cured within fifteen days' written notice, (¶ 8);

e. Upon default, the note holder could employ an attorney to enforce the holder's rights and remedies, and OBMG agreed to pay the holder reasonable attorneys' fees not exceeding fifteen (15%) percent of the outstanding balance owed. (¶ 10.)

13. On or about February 2021, OBMG contacted Brown regarding the purchase of a new 40' Offshore Edition boat, and in March 2021, OBMG ordered gel coats and engines to be used on the boat. At the same time, OBMG informed Brown that his boat would be ready by "the end of July or August." (Brown Dep 68:5–20.)

14.     Shortly thereafter, Brown determined that, based on the expected completion time of the boat, which was later than he expected, he no longer wanted the new 40' boat from OBMG.  (Brown Dep. 69:3–6.)  Brown contends, and OBMG denies, that the $300,000 Note was orally amended by agreement to remove the provision regarding the rollover of principal into a 40' boat and requiring instead that OBMG repay the $300,000 plus interest and royalty payments that came due. (Pl.'s Br. ¶ 31; Def.'s Br. 11.)

## III.    PROCEDURAL HISTORY

15.     The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

16.     Plaintiff filed the Complaint in this action on 23 June 2021, (ECF No. 2), demanding payment of:

a. "[t]he full balance owing by Defendant to Plaintiff under the $50,000 Note . . . in an amount to be determined[,]" and "unless the amount of 15% of the amount due and owing is made within five (5) days of the date of service of this Complaint, Plaintiff will seek its reasonable attorney's fees and costs from Defendant."  (Compl. ¶ 51.)

b. "the full balance owing by Defendant to Plaintiff under the $100,000 Note . . . in an amount to be determined" and "unless the amount of 15% of the amount due and owing is made within five (5) days of the date of service of this Complaint, Plaintiff will seek its reasonable attorneys' fees and costs[.]"  (Compl. ¶ 32.)

c. as to the $300,000 Note, "[p]ursuant to N.C.G.S. § 6-21.2, Plaintiff hereby notifies Defendant that unless the amount of $52,214.70 is made within five (5) days of the date of service of this Complaint, Plaintiff will seek its reasonable attorney's fees and costs from Defendant." (Compl. ¶ 17.)

17. On 20 August 2021, this action was consolidated with *Brown I,* a related records inspection lawsuit pending in Onslow County, for discovery, mediation, and all other proceedings except for trial. (Or. Joint Mot. Consolid., *Brown II* ECF No. 9.)

18. Defendant filed the Motion, supporting brief, and exhibits on 13 September 2022. (*See* Def.'s Mot. for Summ J., ECF No. 43 ["Mot."]; Def.'s Br. Supp Mot. Summ. J., ECF No. 45 ["Def.'s Br."]; Def.'s Index Supp. Mot. Summ. J., ECF No. 44 ["Def.'s Ex."].) Plaintiff filed his response and exhibits on 13 October 2022 (*See* Pls.' Resp. Def.'s Mot. Summ J., ECF No. 57 ["Pl.'s Br."]; Pl.'s Index Opp. Def.'s Mot. Summ. J., ECF No. 56 ["Pl.'s Ex."].) Defendant filed its reply brief on 21 October 2022. (Def.'s Reply Br. Supp. Mot. Summ. J., ECF No. 60 ["Reply Br."].)

19. The Court held a hearing on the Motion on 29 November 2022. (*See* Am. Not. Hearing, ECF No. 59.)

20. On 1 December 2022, the Court, in its discretion, *sua sponte,* deconsolidated this action from *Brown I* in all respects. (Deconsolid. Or., *Brown II* ECF No. 11.)

21. On 12 December 2022, the Court entered an Order and Opinion granting the Motion to the extent it sought summary judgment on the sole claim for relief in *Brown I.* (Or. Op. Def.'s Mot. Summ. J., ECF No. 64.) That Order and Opinion

"address[ed] the Motion only to the extent it seeks judgment as to [*Brown I*]" reserving the remainder of the Motion for resolution in this Order and Opinion.

22.     The Motion has been fully briefed, argued, and is ripe for determination.

## IV.     LEGAL STANDARD

23.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000).

24.     The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83 (citations omitted). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784−85 (2000).

25. The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83. However, the nonmovant "may not rest upon the mere allegations or denials of their pleading, but [the nonmovant's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C.G.S. § 1A-1, Rule 56(e).

## V. ANALYSIS

26. Plaintiff brings claims for breach of the $50,000, $100,000, and $300,000 Notes as well as for attorney's fees and costs. Defendant seeks summary judgment on all claims. The Court will address Defendant's contentions in turn.

### A. The $50,000 and $100,000 Notes

27. Defendant argues that, prior to the initiation of the instant suit, it had already repaid all principal, interest, and royalties owed on the $50,000 and $100,000 Notes. (Def.'s Br. 10–11.) In support of its argument, Defendant cites the affidavit of its manager, Knight, as well as Brown's own deposition testimony stating that all principal and interest had been repaid under the $50,000 and $100,000 Notes and that Brown was "not quite sure" whether any royalties remained owed and outstanding. (*See* Brown Dep. 50:23–51:9, 57:2–18.)

28. In response, Plaintiff admits that principal and interest have been paid on the $50,000 and $100,000 Notes and instead contends that a triable dispute of fact exists regarding whether all royalties have been paid. (Pl.'s Resp. 24.) Specifically,

Plaintiff cites an OBMG check for $2,625.00 dated 19 July 2016 purporting to pay royalties on two 33' boats. (*See* Pl.'s Ex. 16, 4, ECF No. 56.16.) According to Plaintiff, were royalties paid in full as to these two boats, OBMG should have paid at least $3,000.00.[3] (Pl.'s Br. 24.) Defendant offers no rebuttal regarding the alleged underpayment of royalties indicated by the $2,625.00 check.

29. Based on undisputed evidence of record, and specifically the sworn deposition testimony of Brown, the Court concludes that Defendant has repaid in full the principal and interest owed on the $50,000 and $100,000 Notes and grants summary judgment in favor of Defendant thereon. A dispute of material fact remains as to whether all royalties have been paid under the $50,000 and $100,000 Notes, and to that extent, the Motion is denied.

### B. The $300,000 Note

30. Defendant next contends that Plaintiff's claim based on the $300,000 Note should be dismissed because Defendant has paid all interest and royalties due under the $300,000 Note and because the principal sum is not yet due. Defendant argues that the $300,000 Note by its terms will not mature until Brown purchases an additional boat from Defendant. (Def.'s Br. 11.) In response, Plaintiff contends that the $300,000 Note was orally modified, OBMG has defaulted on the $300,000 Note as

---

[3] Under the $100,000 Note and the $50,000 Note, royalties are set at $488.60 per part made for each $50,000 investment under the notes in question. By the time these royalty payments became due, Brown had invested by loan a total of $150,000 toward construction of the 33' molds. Therefore, the royalty would be $1,465.80 per 33' boat sold. The record reflects that instead of paying royalties in the amount of $1,465.80 for each 33' boat sold, OBMG paid royalties to Brown in installments of $1,500, which OBMG evidently characterizes as "overpayments" for which OBMG claims it is entitled to a credit against sums otherwise due. (*See* Def.'s Ex. 16, 2.) Brown disputes this characterization. (Pl.'s Br. 25.)

modified, and Plaintiff has accelerated the payment as the note expressly permits. (Pl.'s Br. 21–22.) There are two bases on which Plaintiff contends Defendant has defaulted: first, by failing to file a form UCC-1 financing statement following delivery to OBMG of the 40' mold, to secure its indebtedness to Brown, and second, by failing to timely pay principal and interest. (Def.'s Br. 20.) Plaintiff relies on his sworn testimony to that effect contained in his verified Complaint. (Compl. ¶¶ 6, 9–10.)

31. As to Plaintiff's first basis, the language that Plaintiff relies upon states "[i]n the event of . . . default under the terms of any Instrument securing this Note," Plaintiff is entitled to accelerate all principal and interest 15 days after written notice to OBMG. ($300,000 Note, ¶ 8.) However, while the record is undisputed that OBMG never filed a financing statement as required, thereby ostensibly breaching the note's terms, OBMG's failure to file is not the same as a breach of an *instrument securing* the note.[4] Accordingly, the Court rejects this argument as a basis for finding Defendant in default on the $300,000 Note.

32. As to Plaintiff's second basis, however, the record evidence reflects disputes of material fact regarding timely payment of interest and royalties on the $300,000 Note. Knight testified that OBMG paid all interest and royalties that were due at the time of the initiation of the lawsuit (because, as noted above, Brown has not agreed to purchase a second 40' boat), while Brown testified that the note was orally modified, leaving principal, interest, and royalties due and owing. (Knight Aff. ¶¶

---

[4] The record before the Court demonstrates that Plaintiff does not contend OBMG's failure to file a Form UCC-1 upon receipt of the 40' mold injured Plaintiff in some calculable way. The Court also notes that, as pointed out by OBMG, to the extent Plaintiff was disadvantaged by OBMG's failure to timely file a UCC-1, Plaintiff was legally permitted to file it.

36–37, Ex. J; Compl. ¶¶ 6, 9–10.) This factual dispute precludes summary judgment for Defendant.

33. Because there is a triable issue of fact as to whether OBMG has failed to pay principal, interest, and royalties, and therefore defaulted on the $300,000 Note, this dispute of fact is sufficient to warrant denial of the Motion as to the $300,000 Note.

C. **Attorneys' Fees**

34. In addition to monetary damages, Plaintiff seeks costs and attorneys' fees under N.C.G.S. § 6-21.2 for the collection of all sums owed and outstanding under the Notes. Defendant moves for summary judgment seeking the dismissal of Plaintiff's claim for attorneys' fees as to all three Notes.

35. In North Carolina, the general rule is that "a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Stillwell Enter. v. Interstate Equip. Co.*, 300 N.C. 286, 289 (1980) (citing *Hicks v. Albertson*, 284 N.C. 236, 200 (1973)). N.C.G.S. § 6-21.2 authorizes a plaintiff who sues to collect on a promissory note to recover attorney's fees subject to certain requirements:

> (2) If such note . . . provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note[.]

> (3) As to notes . . . the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

> . . . .

(5) The holder of an unsecured note . . . shall, after maturity of the obligation by default or otherwise, notify the . . . debtor . . . that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such . . . debtor . . . sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorney's fees. If such party shall pay the 'outstanding balance' in full before the expiration of such time, then the obligation to pay the attorneys' fee shall be void, and no court shall enforce such provisions.

N.C.G.S. § 6-21.2.

36. Defendant argues that it is entitled to summary judgment as to Brown's claim for attorney's fees because Brown failed to provide adequate notice in compliance with N.C.G.S. § 6-21.2(5). Defendant claims that notice was inadequate because, first, the outstanding balance is not stated in the notices provided by Plaintiff, and second, the notices contained in the Complaint do not demand the payment of the outstanding balance owed on each Note, but instead demand only fifteen (15%) percent thereof. (Reply Br. 4 (discussing Compl. ¶¶ 17–18, 34–35, 52–53).)

### 1.     Notice Regarding the $50,000 and $100,000 Notes

37. It is undisputed that Plaintiff provided five-day notice as required under section 6-21.2(5) to Defendant in the Complaint itself rather than by email or U.S. Mail. *See Binning's, Inc. v. Roberts Const. Co.*, 9 N.C. App. 569, 572 (1970) (holding that the five-day notice in section 6-21.2 need not "be given prior to the institution of an action" and that notice must simply be given after maturity, by default or otherwise).

38.     Defendant, however, contends that the language in the notices contained in Plaintiff's Complaint do not conform with section 6-21.2. As to the notices contained in the Complaint regarding the $50,000 and $100,000 Notes, the Court agrees. Section 6-21.2(5) provides that an "obligor will have five days' notice to pay any outstanding balance on the debt before the claimant goes to the expense of employing counsel to collect the balance due." *Wilson Bldg. Co. v. Thorneburg Hosiery Co.*, 85 N.C. App. 684, 688–89, *disc. review denied*, 320 N.C. 798 (1987). Thus, the intent of the provision is to incentivize debtors to promptly pay overdue sums in order to avoid the extra burden of attorneys' fees. Plaintiff's notices regarding the $50,000 and $100,000 Notes demand "15% of the amount due and owing" be "made" within five days while also acknowledging that the amount due is "to be determined." (Compl. ¶¶ 32–34, 51.) It is insufficient notice under section 6-21.2 for a noteholder to state, without more, that the amount to be paid is 15% of the amount due and owing under the Note and that the amount owed is "to be determined."

39.     The notices are additionally insufficient because they do not state that sums must be *paid* to Plaintiff. The $50,000 and $100,000 Notes state that Plaintiff will seek fees and costs unless "the amount of 15% of the amount due and owing is *made* within five (5) days of the date of service of this Complaint[.]" (Compl. ¶¶ 34, 51.) Instructing that a sum must be "made" within five days is nonsensical and fails to provide adequate notice that *payment* is required to avoid liability for attorneys' fees.

40.     Accordingly, the Court grants Defendant's Motion as to Plaintiff's request for attorneys' fees under the $50,000 and $100,000 Notes.

**2.      Notice Regarding the $300,000 Note**

41.     Defendant contends that the notice provided in the Complaint regarding the $300,000 Note was also improper and ineffective, and the Court agrees.   The Complaint demanded that a specific sum, $52,214.70, which Plaintiff calculated to be 15% of $348,098.18 (the principal amount $300,000 plus undefined additional amounts totaling $48,098.18) be "made" within five days. Such language, as explained in paragraph 40, *supra*, does not state that Defendant must pay Brown to avoid liability for attorneys' fees.  The Court concludes that such notice is insufficient to comply with the requirements of section 6-21.2(5).  (Compl. ¶ 15.)  As a result, the Court grants the Motion to the extent it seeks summary judgment dismissing Plaintiff's claim for attorneys' fees under the $300,000 Note.

## VI.      CONCLUSION

42.     For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion as follows:

A.      The Motion is **GRANTED** to the extent it seeks dismissal of the breach of contract claims for failure to pay principal and interest on the $50,000 and $100,000 Notes, and those claims are hereby **DISMISSED** with prejudice;

B.      The Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's claim for attorneys' fees under the $50,000, $100,000, and $300,000 Notes, and those claims are hereby **DISMISSED** with prejudice.

C.      Except as granted herein, the Motion is **DENIED**.

**SO ORDERED**, this the 22nd day of December, 2022.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
for Complex Business Cases